Thomas L. GLENN, Plaintiff-Appellant,

v.

J. Gardner NEWMAN, etc., et al., Defendants-Appellees.

No. 78–2146.

United States Court of Appeals, Fifth Circuit.

March 24, 1980.

Richard A. Childs, John C. Swearingen, Jr., Ben B. Philips, Columbus, Ga., for plaintiff-appellant.

Lewis, Hunicutt, Taylor & Daniel, James R. Lewis, LaGrange, Ga., for defendants-appellees.

Before GOLDBERG, FRANK M. JOHNSON, Jr., and HATCHETT, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Thomas Glenn brought this civil rights action against numerous defendants seeking damages, and declaratory and injunctive relief under 42 U.S.C. §§ 1983, 1985(3). His claims arise out of his dismissal from

the police department of LaGrange, Georgia, where he served as a policeman for eleven years. Named as defendants are the Mayor of LaGrange, the City Manager, the city's Director of Personnel, the Chief of Police and several city councilmen. The district court granted defendants' motion for summary judgment and plaintiff appeals.

Thomas Glenn was a sergeant with the LaGrange Police Department. On October 1, 1976, one of Glenn's superiors discovered him in his car with two young women, one of whom was sixteen years old. On October 5, the sixteen year old girl was reported missing by her parents. On October 6, the same superior who had found Glenn in the car with the girl became suspicious that Officer Glenn knew of the missing girl's location. He questioned Glenn as to whether the girl had contacted him but Glenn refused "to make a statement at [that] time."[1] Glenn was relieved of duty for the evening. The next day, believing that Glenn was impeding the investigation of the police force, the Chief of Police dismissed Glenn from his job.

The dismissal occurred in the following way. On October 7, 1976, the Chief of Police fired Glenn effective immediately and gave him a written copy of his dismissal notice. Cited as grounds for dismissal were (1) contributing to the delinquency of a minor and (2) conduct detrimental to the good order, efficiency and discipline of the department.[2] Pursuant to police depart-

---

1. The girl subsequently testified that Glenn knew her location during the four days she remained away from home, that he informed her of the LaGrange Police Department's efforts to find her, and that he later met her in Atlanta and spent some time with her there before attempting to persuade her to come home.

2. The Notice of Personnel Change also contained the following paragraph:

A policeman must not fail to realize that he is the target of the public eye, and a ready subject of discussion. His merits and demerits are a matter of interest not only to those he has direct dealings with, but also to the public generally. This is so because his official duties are closely related to practically every phase of community life. He must therefore, have habits of acceptable conduct that will merit public approval.

The Manual of Rules and Regulations of the LaGrange Police Department describes its disciplinary procedures in the following manner:

4.2 An employee who does not perform his work at an acceptable level of competence as determined by his supervisor or who violates the rules, regulations, procedures is guilty of conduct detrimental to the good order efficiency and discipline of the department and may be suspended, disciplined, dismissed, demoted by the Chief of Police for violating rules regulations or for any of the following offenses:

a. The commission of a felony, misdemeanor, or violation of a city ordinance.

b. Habitual indulgence in narcotics or drugs

c. Using intoxicants in violation of these rules

d. Neglect of duty or failure to report for duty

e. Disobedience of, or failure to comply with, any order as defined herein or any other special order, general order, rule, or regulation.

f. Absent from duty without leave

g. Conducting unbecoming an officer which might be detrimental to the service

h. Willful mistreatment of a prisoner

i. Sleeping while on duty

j. Accepting or soliciting a bribe

k. Aiding or permitting a prisoner to escape

l. Immorality

m. Appropriating any lost, found, stolen, or departmental evidence property to his own use

n. Falsification of reports, records, or communications

o. Improper political activity

p. Feigning sickness or injury to escape duty

q. Rough or careless handling of city property

r. Any other act or omission to act contrary to good order and discipline of the department

s. Dangerous misuse of firearms

t. Accumulation of violations or infractions of departmental rules and regulations which may indicate an officer or employee's inability to conform to the rules and regulations of the Department.

4.3 Types of Discipline

A. *Suspension* —is the temporary removal of an employee from the services for cause for a specified or period of time not to exceed 30 calendar days. A suspended employee shall not receive pay or be permitted to use privileges or benefits during the suspension period.

    *    *    *    *    *    *

A written statement of the reasons for any suspensions shall be furnished and discussed with the employee by the Chief of Police and a

ment regulations, the Chief of Police filed a written copy of the dismissal with the City Manager.[3]

The City Manager met with Glenn on October 18. He was unable to reach an "administrative determination" and recommended that the Mayor and City Council hold a hearing on the matter.[4] On November 9, 1976, the Mayor and Council held a public hearing and upheld Glenn's dismissal.

The hearing was held in accordance with Section 5 of the Personnel Policies of the City of LaGrange. This provides that:

The City Attorney . . . shall present substantiating evidence. When it appears to the Mayor and Council that the charges have not been substantiated to their satisfaction, they may take whatever equitable action they deem necessary at the time. When the charges have been substantiated to the satisfaction of the Council, the appealing employee shall

then be called upon to answer the charges and offer evidence in his behalf. The Mayor and Council in their discretion may permit rebuttal and surrebuttal.

Following this procedure, the city presented its evidence and Glenn's attorney cross-examined the city's witnesses. Attorneys for both sides then made statements and the Mayor and Council withdrew to deliberate. On their return, the Mayor announced that they had voted to sustain the plaintiff's release and then said, "I think that concludes the hearing." The city attorney noted that the plaintiff had the right to respond to the city's evidence and the plaintiff then presented testimony on his behalf. At the conclusion of all the evidence, the Mayor asked for comments and then "sustained" the previous verdict. One councilman affirmed his previous dissenting vote.

Without conducting a *de novo* hearing, the district court entered an order granting

---

copy of the statement filed with the City Manager.

B. *Demotion*—is the reduction within the salary range as provided in the pay plan or a reduction to a lower grade at a reduced rate of pay. An employee may be demoted for disciplinary reasons by the Chief of Police. A written report shall be furnished and discussed with the employee and a copy filed with the City Manager prior to the effective date of such action.

C. *Dismissal*—An officer or employee may be separated, discharged, from the service for delinquency, misconduct, inefficiency, or inability to perform the work satisfactorily. Dismissals or career service employees are effective only after the Chief of Police has presented and discussed the reasons for such discharge with the employee and filed a written copy of the action to the City Manager.

3. *See* Note 2, *supra*.

4. 5.0 *APPEALS AND GRIEVANCE PROCEDURE*

It is the policy of the City of LaGrange to foster employee satisfaction and to give careful consideration and attention to any complaint or grievance on any matter concerning an employee's status, discipline or conditions of employment.

*Appeal*—An appeal may be filed on any action taken by employee's supervisor affecting his status, i. e. promotion, demotion, suspension and disciplinary action. An employee who has a complaint or

grievance should first try to settle through discussion with his immediate supervisor and the Chief of Police. Every effort should be made to find an acceptable solution by informal means at this level of supervision.

5.1 *Procedure for Appeal*—A career employee who has been adversely affected by a personnel action by his supervisor may file an appeal in writing to the City Manager within seven (7) calendar days of receipt of notification of such action by the employee's supervisor. The appeal shall be in writing and shall contain the employee's name, position title, department, home address, a statement as to why the appeal is being filed and such other information needed to support the appeal.

5.2 *Review*—The City Manager shall review the appeals with the employee, the supervisor and the department head in an effort to resolve the complaint or grievance. If the complaint or grievance cannot be resolved at this level, the City Manager shall within five (5) days after the conference make a recommendation to the Mayor and Council at a hearing on the issues be held by the Council. The Mayor and Council at its next regular meeting will set a date for hearing the appeal.

5.3 *Hearing*—The Mayor and Council shall hear the appeal under the procedures set forth in Section 5 of the Personnel Policies of the City of LaGrange.

summary judgment for the city. Assuming without deciding that the plaintiff had a protectable "liberty" or "property" interest, the court nonetheless held that the hearing before the Mayor and City Council fully afforded due process to the plaintiff. It also held that the charge of "conduct detrimental to the good order, efficiency and discipline of the department" was well supported by the evidence pertaining to Glenn's activities during the search for the missing girl and that plaintiff had received sufficient notice of the grounds of his dismissal.

On appeal, Glenn argues that he has a property interest in his job sufficient to warrant the protection of the Fourteenth Amendment and the rights of due process. He further contends that the pretermination procedure given him was constitutionally infirm because it lacked predischarge notice and an opportunity to reply. He argues that the post-termination procedures used by the city were also constitutionally insufficient for several reasons.

■ Before we reach the question whether the procedures accorded Glenn meet the requirements of due process, it is necessary to determine whether Glenn possessed a property interest in his job. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). A property interest in employment sufficient to invoke procedural due process protections need not be a formal contract or a tenure system, but may be created by ordinance or by implied contract. *Id.* at 344, 96 S.Ct. at 2077. *See Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972) (issue is whether there are "rules or mutually explicit understandings" between the claimant and the governmental employer). In either case, however, the sufficiency of the claim of entitlement must be decided by

reference to state law. *Bishop v. Wood*, 426 U.S. at 344, 96 S.Ct. at 2077.

■ Glenn argues that, although he has no formal contract with the city, the city regulations defining the conditions of his employment and the rules governing his conduct create an expectation of continued employment. The rules provide that a career officer or employee may be separated or discharged from the service for delinquency, misconduct, inefficiency or inability to perform the work satisfactorily. They list a number of violations that may warrant dismissal. *See* note 2, *supra*. On their face, the regulations may fairly be read as creating a reasonable expectation of continued employment absent noncompliance with one of the specified reasons. Reference to state law supports a finding of a constitutionally protected property interest in Glenn's employment. Although we do not have any authoritative interpretation of these city regulations by a Georgia state court and the United States District Judge declined to decide the issue,[5] the Georgia Supreme Court has held that the civil employment which allows termination only "for cause" creates an expectation of continued employment that is constitutionally protected. *Brownlee v. Williams*, 233 Ga. 548, 212 S.E.2d 359, 362 (1975) (construing Civil Service Act of Fulton County that provides: "Any appointing authority may dismiss a subordinate in the classified service for cause"). *See Thurston v. Dekle*, 531 F.2d 1264, 1272 (5th Cir. 1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978). *Cf. United Steelworkers v. University of Alabama*, 599 F.2d 56, 60–61 (5th Cir. 1979) (construing Alabama law). Reading the regulations in their entirety to glean the expectations of the parties involved, *see United Steelworkers v. University of Alabama, supra*, we conclude that the specified reasons listed in the regulations are meant to be analogous

---

**5.** *See Bishop v. Wood*, 426 U.S. at 346, & n. 10, 96 S.Ct. at 2078 & n. 10 ("[T]his Court has accepted the interpretation of state law in which the District Court and the Court of Appeals have concurred even if an examination of the state-law issue without such guidance

might have justified a different conclusion"). *See also, Hicks v. Dobbs*, 612 F.2d 577 (5th Cir. 1980) (construing police department regulations of Covington, Georgia; *Webb v. Dillon*, 593 F.2d 656, 657 (5th Cir. 1979) (construing Civil Service Act of Fulton County, Georgia).

to allowing termination only for "cause." Indeed, the regulations specifically provide that suspension, listed along with dismissal as a type of discipline to which an employee may be subjected, may occur only "for cause." Moreover, the review procedure provided by the city indicates the mutual understanding that an employee may be discharged only for "cause" and has a right to challenge that "cause." *See In re Wiggins,* 144 Ga.App. 707, 242 S.E.2d 290 (1978) (due process does not require trial type hearing prior to dismissal; regulation provided "dismissals [of police officers] are . . . made for delinquency, misconduct, inefficiency or inability to perform the work of the position satisfactorily). We find, therefore, that for purposes of this appeal Glenn has demonstrated a property interest in continued employment sufficient to invoke minimum due process protection.

Glenn next contends that the pretermination procedure used by the Chief of Police was constitutionally deficient. The Police Chief presented and discussed the reasons for Glenn's discharge with him in the same meeting that he advised Glenn of his dismissal. Glenn argues that this did not give him adequate notice of the charges against him or an opportunity to rebut them.

■ It is well established that there must be *some* form of hearing before deprivation of a constitutionally protected property interest. *Board of Regents v. Roth,* 408 U.S. 564 at 569–70 & n. 8, 92 S.Ct. 2701 at 2705 & n. 8, 33 L.Ed.2d 548. But the formality and procedural requisites for the hearing can vary, depending on the importance of the interests involved and the nature of the subsequent proceedings. *Id.* In seeking to minimize the risk of wrongful termination to an employee without burdening the government with elaborate pretermination proceedings, this Court has outlined a procedure to meet minimum due process requirements. *Thurston v. Dekle,* 531 F.2d at 1273. This includes, prior to termination, written notice of the reasons for termination and an effective opportuni-

ty to rebut those reasons. Effective rebuttal means giving the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision. *Id.* We hold that the pretermination procedures afforded Glenn did not conform with *Thurston's* requirements.

Nevertheless, we find that any error involved was cured in the subsequent public hearing before the Mayor and City Council. *See Blair v. Robstown Independent School District,* 556 F.2d 1331, 1334–35 (5th Cir. 1977); *Thurston v. Dekle,* 531 F.2d at 1269. In the post-termination proceedings, Glenn received written notice of the charges against him and was given sufficient time to prepare for the hearing. At the hearing, he was represented by an attorney who examined and cross-examined witnesses on his behalf, and he was allowed to present his case orally.

Glenn contends that this post-termination hearing did not accord him due process under the standards outlined in *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir. 1970) (outlining minimum requirements of post-termination due process for termination of teacher for cause). However, none of the errors of which he complains rise to the level of a deprivation of due process. *See Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 162–63, 71 S.Ct. 624, 643–44, 95 L.Ed. 817 (1953) (Frankfurter, J., concurring) (type of hearing required to satisfy the standards of due process varies according to the facts of a situation; due process is a general requirement that legal processes follow the forms of law, be appropriate to the case, and be just to the parties involved); *Hicks v. Dobbs,* 612 F.2d 577 (5th Cir. 1980) (requirements of procedural due process are flexible concepts to be discerned from the facts of each case); *Robbins v. U.S.R.R. Retirement Board,* 594 F.2d 448, 451 (5th Cir. 1979).

■ First, Glenn contends that the city failed to advise him in sufficient detail of

the reasons for his discharge. Although he admits that the first ground contained in the notice, contributing to the delinquency of a minor, is adequately defined under Georgia law, he alleges that the second ground, engaging in conduct detrimental to good order, efficiency, and discipline of the police department, does not provide sufficient notice of the type of improper conduct in question. Under the circumstances of this case, we think that this statement of reasons was sufficient to give Glenn notice. The transcript of the proceeding clearly shows that Glenn fully understood that the grounds of his dismissal were connected to the charge of impeding an investigation then being conducted by the police force of which he was a member. *See Austin v. Maxwell*, 456 F.2d 1237, 1238 (5th Cir. 1972).

█ Glenn next alleges that he was not advised of the names of adverse witnesses or of the nature of their testimony. However, all of the witnesses were principal characters in the episode, and Glenn could have reasonably expected that they would be called to testify. Furthermore, judging by his attorney's cross-examination of adverse witnesses, Glenn was aware of who could and possibly would be called and what they would testify. For example, Glenn's counsel played three times a taped telephone conversation that purportedly took place between Glenn and the minor in an attempt to undermine her credibility. Moreover, the plaintiff used various signed statements in efforts to impeach the city's witnesses. We therefore find no merit to his claim of inadequate notice as to the identity and testimony of adverse witnesses.

█ Glenn's final allegation states that he was not accorded a meaningful opportunity to be heard in his own defense because the Mayor and City Council made the decision upholding the plaintiff's dismissal prior to the time that the plaintiff was heard. Although the procedure followed is susceptible to the erroneous belief that only an *ex parte* hearing is in order, any such mistake was corrected. After the finders of fact listened to both sides of the case, they adhered to their original conclusion that the plaintiff's dismissal was warranted by his conduct. Furthermore, even before the first "deliberation," Glenn had the right to cross-examine the city's witnesses and his counsel attempted to challenge their credibility. Under the facts of this case, we find that Glenn received a "meaningful opportunity" to be heard in his own defense.

█ In conclusion, we note that this is not a class action. At most Glenn seeks damages for violation of his constitutional rights.[6] Because any claim of pretermination due process violations was cured by the subsequent due process hearing, the only damages to which Glenn is entitled accrued during the period between his dismissal and the date of his post-termination hearing. We therefore remand for an assessment of backpay due for the period of time between his dismissal (October 7, 1976) and the date he was entitled to post-termination procedures (November 9, 1976).

AFFIRMED IN PART; REVERSED IN PART; and REMANDED FOR ASSESSMENT OF BACKPAY FROM OCTOBER 7, 1976, TO NOVEMBER 9, 1976.

---

6. Because any claim of pretermination due process violations was cured by the subsequent hearing on November 9, 1976, there is no continuation of any constitutional violation as concerns Glenn. Thus, plaintiff has no standing to seek declaratory or injunctive relief in this matter. *See Thurston v. Dekle*, 531 F.2d at 1269.