Susan **HEINS**

v.

The **BEAUMONT INDEPENDENT SCHOOL DISTRICT et al.**

**Civ. A. No. B–80–107–CA.**

United States District Court, E. D. Texas, Beaumont Division.

Oct. 15, 1981.

Larry Watts, Houston, Tex., for Susan Heins.

Lawrence Louis Germer, Orgain, Bell & Tucker, Anthony Brocato, Beaumont, Tex., for defendants.

## MEMORANDUM OPINION *

JOE J. FISHER, District Judge.

Susan Heins brought this suit against the Beaumont Independent School District and eleven trustees and administrators individually and in their official capacity claiming that she was discharged in violation of her first and fourteenth amendment rights. The defendants' motion for summary judgment and "preferred review," *see Ferguson v. Thomas*, 430 F.2d 852, 858 (5th Cir. 1970), based on the administrative record was denied and a trial was held on February 27, 1981. Jurisdiction is based on 28 U.S.C. § 1331.

The parties agreed to submit the case to the Court on the record of the school board, together with depositions and such further testimony as they deemed necessary. The parties further agreed to submit only the issue of liability, leaving the questions of damages and attorney's fees to a later date if liability is found.

## I. THE FACTS

### A

On March 27, 1979, at an open public meeting, the board of trustees of the Beaumont I.S.D. passed a resolution ordering that a notice be served on Susan Heins, an employee of the school district, proposing that she be discharged. Heins was, at the time, a "continuing contract" teacher who taught classes in special education. *See* Texas Educ. Code Ann. § 13.106 (Vernon 1972). The notice specified four reasons for the proposed discharge, named the district's witnesses and advised the plaintiff of her right to a hearing. It also suspended her without pay "effective immediately." *See id.* § 13.113. The plaintiff requested a hearing on the discharge, and one was held on May 2 through May 22, 1979. After the hearing, the school board voted unanimously to discharge Susan Heins. Ms. Heins thereafter filed this suit claiming that the action of the Beaumont I.S.D., its trustees

and certain employees, violated her first and fourteenth amendment rights and 42 U.S.C. § 1983.

### B

The plaintiff was employed as a special education teacher for four to five years when she was terminated by the district. She has a bachelor's degree from North Texas State University and a master's degree from Lamar University, and is certified to teach emotionally disturbed children by the Texas Education Agency. She was a charter member of the Beaumont Federation of Teachers, AFL–CIO, and president in 1975. The Beaumont Federation of Teachers was a minority union and actively sought equal status with the other teacher union, the Beaumont Classroom Teachers Association. As president of the Beaumont Federation of Teachers, the plaintiff processed grievances against the Beaumont I.S.D. and its administrators, and processed one all the way to the Texas Education Agency.

One of the first events leading to the hostilities in this case occurred near the end of the 1977–78 school year when the plaintiff was at French High School. John Verret and defendant Calvin Williams were co-principals and defendant Hoyt Simmons was dean of male students. Heins had a confrontation with Simmons over his allegedly using an ethnic slur to describe a student referred to him. Also during the 1977–78 school year, the plaintiff processed a grievance against her former supervisor, Mary Lynas. Heins claims that the tension between herself and the administrators increased because she insisted that a representative of the Beaumont Federation of Teachers be present at the meeting, and because the administration disapproved of her taking the grievance to members of the board of trustees.

At the beginning of the 1978–79 school year, Verret was replaced by Simmons as

---

* This Memorandum Opinion constitutes the Findings of Fact and conclusions of Law re-
quired by Rule 52, F.R.Civ.P.

co-principal of French High School. Heins expected to become the head of the special education department by reason of her seniority. When Simmons told her that she was not to become chairman, she telephoned the Central Administrative Office of the Beaumont I.S.D. to inquire about the policy for selecting department chairmen. According to the plaintiff, she spoke to defendant Superintendent Rector, who was abusive to her and suggested that she find employment elsewhere if she was unhappy with the administration of the Beaumont I.S.D.

At the commencement of the 1978–79 school year, the plaintiff failed to attend an "in service" meeting at French High School. The plaintiff was directed to attend the in service meeting, to be held on August 29, 1978 from 1:30 until 3:00 p. m., by a letter from the assistant superintendent defendant Silverberg. Ms. Heins admitted that she was absent from the meeting. Instead, she arranged a meeting with the supervisor for special education, Mrs. Walker, to discuss, among other things, who was to be head of the department at French High School.

In September, 1978, defendant Simmons asked the plaintiff to fill out a personnel evaluation form for the Southern Association for accreditation. After a second request, the plaintiff informed Simmons that she had completed the form the preceding school year and given it to Mr. Verret, Simmons' predecessor. In a less than friendly confrontation, the plaintiff agreed to fill out the form if Simmons would give her another one, as the plaintiff had destroyed the first one believing she had already completed one. Simmons did not give her another form and none was thereafter submitted.

On several occasions during the 1978–79 school year, the plaintiff left the French High School campus without permission during her "preparation period." The administration gave her a letter stating that teachers were not permitted to leave the campus without written permission and approval of the principal. On three occasions, the plaintiff submitted requests which were not acted on before she left. The last time she requested permission, it was denied before she left, but she went home anyway, allegedly to turn off an appliance. The other reasons asserted for her leaving campus were to eat lunch or for a doctor's appointment.

In January, 1979, the district, through co-principals Simmons and Williams, scheduled a conference with the plaintiff to review the administration's evaluation of her performance during the previous school year and to make a recommendation regarding her future employment. The plaintiff attended but left after seven of the twenty-nine categories of the evaluation were completed. She stated that she left because she felt that her input was being ignored. On January 22, 1979, Simmons handed the plaintiff a notice requiring her to sign and return the evaluation form on or before January 24 and to be present to complete the recommendation portion by that date. The form was not signed until March 26, 1979. The plaintiff filed a grievance regarding the evaluation conference, but the dispute was never resolved.

### C

Malcolm Rector, defendant and then superintendent of Beaumont I.S.D. recommended to the Board at a closed meeting in mid March, 1979, that Susan Heins be discharged. He based his recommendation on four incidents described above. These were (1) her failure to attend the in service meeting on August 29, 1978; (2) her failure to complete the Southern Association individual form; (3) her leaving campus without permission during the preparation period and (4) her failure to be present to complete and sign her staff evaluation form. Superintendent Rector prepared a package of materials consisting of Ms. Heins' personnel file and the material substantiating his allegations.

The board approved the recommendation in what one trustee described as "straw vote." On March 23, the plaintiff's attorney requested a hearing before the superin-

tendent made any recommendations to the board. Also on March 23, the board issued and filed a notice of public meeting to be held on March 27, 1979. Among the items on the agenda was the item:

f. Resolution—consideration of a resolution that notice that the Board of Trustees proposes to discharge Susan Heins be served upon her.

At that open meeting, the resolution was passed and a ten page notice, with exhibits, was served on Heins that evening. The notice stated that the board proposed to discharge her for "(1) repeated failure to comply with official directives and established school board policy; and (2) repeated and continuing neglect of duties." The notice described the four incidents discussed above as grounds for the proposal, stated the names of witnesses and the nature of their testimony. The notice advised the plaintiff that she could request a public hearing within ten days to be held within fifteen days of the request. Finally, the notice stated that "The Board of Trustees orders that you be suspended without pay as a teacher in the Beaumont Independent School District, effective immediately."

### D

The Board set the hearing date for April 10, 1979, and later reset it for May 2, at the request of the plaintiff. The hearing was held on May 2, 7, 8, 10, 17 and 22, 1979. After May 2, Robert Keith, an attorney, was selected to preside over the hearing as an administrative law judge. The hearing was a full blown adversary hearing, with both sides vigorously represented by counsel. At the conclusion of the testimony of witnesses and argument of counsel, the Board of Trustees voted unanimously to terminate Susan Heins.

### II. DUE PROCESS

#### A

■ Susan Heins claims that she was terminated without due process. As a starting point, it must be determined whether Heins had a property interest in her employment.

*See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1974). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law. . . ." *Id.* at 577, 92 S.Ct. at 2709. It is undisputed in this case that Susan Heins was a "continuing contract" teacher. *See* Texas Educ. Code Ann. § 13.106 (Vernon 1972). She could be discharged during the school year

for one or more of the following reasons, which . . . constitute lawful cause for discharge

(1) immorality;

(2) conviction of any felony or other crime involving moral turpitude;

(3) drunkenness;

(4) repeated failure to comply with official directives and established school board policies;

(5) physical or mental incapacity preventing performance of the contract of employment; and

(6) repeated and continuing neglect of duties.

*Id.* § 13.109. The Court finds that Susan Heins had a property interest in her employment, and was entitled to some sort of due process before she could be terminated.

#### B

The plaintiff argues that she possessed several "liberty interests" which were abridged without due process. The Court has already found that plaintiff had a property interest in her employment sufficient to accord the right of a hearing and therefore need not decide whether she had any "liberty interests." The plaintiff was entitled to a hearing to protect any interests that she had whether they are classified as liberty or property.

#### C

■ Since the plaintiff had a property interest, due process requires, as a minimum, that she be given a hearing where she could be informed of the grounds of her dismissal. *See, e. g., Perry v. Sindermann*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972).

[W]hen a teacher who is to be terminated for cause opposes his termination, minimum procedural due process requires that:

> (a) he be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist,
>
> (b) he be advised of the names and the nature of the testimony of witnesses against him,
>
> (c) at a reasonable time after such advice he must be accorded a meaningful opportunity to be heard in his own defense,
>
> (d) that hearing should be before a tribunal that both possesses some academic expertise and has apparent impartiality toward the charges. . . .

*Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir. 1970).

In addition, Texas statutory procedure requirements must be met. *See* Texas Educ.Code Ann. §§ 13.107, .109, .112–.115 (Vernon 1972). Specifically, the Education Code requires written notice to be given to the teacher by the board of the proposed action and the grounds assigned therefore. *Id.* § 13.111(a). The teacher is entitled to a public hearing at which she "may employ counsel, if desired, and shall have the right to hear evidence upon which the charges are based, to cross-examine all adverse witnesses, and to present evidence in opposition thereto, or in explanation." *Id.* § 13.-112. The Education Code permits the teacher to be suspended without pay for the reasons listed in § 13.109 "by order of the board of trustees, . . . but in such event the hearing shall not be delayed for more than 15 days after request for hearing, unless by written consent of the teacher." *Id.* § 13.-113.

### D

■ The first procedural deficiency that merits discussion is the plaintiff's claim that the school board was not impartial. As best the Court can determine, her argument is that the record establishes "an inference of personal antipathy" between the plaintiff and some members of the board, or "some personal interest or settled prejudgment." *See* Plaintiff's Post Trial Brief at 17. The plaintiff also contends that "governmental agents who recommend termination of rights cannot sit as impartial arbiters on the propriety of their recommendation." Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at 5. Presumably, plaintiff relies heavily on the fact that the board met in a closed meeting in mid-March, 1979, and voted to terminate Susan Heins in a "straw vote."

The Fifth Circuit "has refused to adopt any per se rule disqualifying administrative hearing bodies." *See Megill v. Board of Regents of the State of Florida*, 541 F.2d 1073, 1079 (5th Cir. 1976) *citing Duke v. North Texas State University*, 469 F.2d 829, 834 (5th Cir. 1972), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2760, 37 L.Ed.2d 160 (1973).

> The record must support actual partiality of the body or its individual members. "In the absence of evidence to the contrary, we must assume therefore that the [school board] acted independently and properly . . ."

*Megill, supra* at 1079, *quoting Duke, supra* at 834.

Furthermore, it should be noted that the closed meeting in March, 1979, did not result in any loss of benefits to the plaintiff. The result of the meeting was that the board decided unanimously to proceed with the lengthy and expensive procedures involved in dismissing a teacher for cause. The mere fact that the board reviewed the administration's evidence and decided to follow their recommendation in no way indicates that they did not consider the plaintiff's rebuttal at the subsequent hearing. *See Glenn v. Newman*, 614 F.2d 467, 473 (5th Cir. 1980). The Court finds that the plaintiff has not shown the board to be partial.

### E

■ Susan Heins contends that the defendants denied her due process in suspending her without pay without a prior hearing. In *Thurston v. Dekle*, 531 F.2d 1264 (5th Cir. 1976), *vacated on other grds.*, 438

U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), the Fifth Circuit described the minimum pretermination procedural elements required by the due process clause of the fourteenth amendment.

> Where a governmental employer chooses to postpone the opportunity of a nonprobationary employee to secure a full-evidentiary hearing until after dismissal, risk reducing procedures must be accorded. These must include, prior to termination, written notice of the reasons for termination, and an effective opportunity to rebut those reasons. Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision.

*Id.* at 1273 (footnotes omitted).

In one respect, the plaintiff's situation parallels that of the plaintiff in *Thurston*. In *Thurston*, the plaintiff was suspended without pay for thirty days by letter. The suspension was to become permanent at the end of the thirty days. The municipal regulations permitted him to appeal, which entitled him to a hearing. 531 F.2d at 1266–67.

> The lower court correctly saw this suspension process as no more than a facade. It held that "in reality, 'suspension' under the present facts ... is ... the functional equivalent of *permanent discharge* subject to the condition subsequent that an employee may be reinstated with backpay upon successful appeal."

*Id.* at 1272.

The present case has one distinguishing feature, however. Before the Board suspended Ms. Heins without pay, it published a public notice of its open meeting with a statement that it intended to discuss a resolution concerning the termination of Susan Heins. Even before this notice was published, however, she and her lawyer were aware of the proposed resolutions and intentions of the board. The reasons were given at that public meeting, and the plaintiff, had she chosen to attend, could have responded orally or in writing. *Thurston* requires a reasonable opportunity to respond after receiving notice of the discharge. The Court finds that the plaintiff had a reasonable opportunity at this open meeting, but failed to take advantage of it.[1]

### III. REVIEW OF THE BOARD'S DECISION

Prior to trial, the defendants moved for "preferred review," asking the Court to decide that based on the record of school board hearing, the decision of the board was supported by substantial evidence. *See Stapp v. Avoyelles Parish School Board*, 545 F.2d 527, 534 (5th Cir. 1977); *Robison v. Wichita Falls & North Texas Community Act. Corp.*, 507 F.2d 245, 254–56 (5th Cir. 1975); *Ferguson v. Thomas*, 430 F.2d 852, 858 (5th Cir. 1970). The Fifth Circuit has stated that:

> Ordinarily the District Court is not expected to conduct a de novo hearing. Rather, the first inquiry is to *examine the record* of a school board's hearing to ascertain whether the *procedures* followed violated federal rights. In other words, did School Board conduct a hearing for

---

1. Even if there were any error, however, it was cured by the subsequent public hearing before the board. *See Glenn v. Newman*, 614 F.2d 467 (5th Cir. 1980). "Because any claim of pretermination due process violations was cured by the subsequent due process hearing, the only damages to which [the plaintiff] is entitled accrued during the period between [her] dismissal and the date of [her] post-termination hearing." *Glenn, supra* at 473. The Fifth Circuit in *Glenn* "remanded for an assessment of backpay due for the period of time between her dismissal ... and the date he was entitled to post-termination procedures ..." *Id.* at 473.

Furthermore, the plaintiff has waived any claim based on *Thurston v. Deckle* by failing to raise it at trial and in her post trial brief. The plaintiff argued that she was entitled to a full blown hearing before the superintendent or the board decided to terminate her. The plaintiff's chief complaint is that the board met in a closed session sometime before the March 27th meeting and decided to terminate her in a "straw vote." Yet no action was taken as a result of this meeting. Nowhere does the plaintiff complain that she lacked notice or opportunity to respond to the proposal approved at the March 27th open board meeting.

Principal adequate by the procedural due process requirements of the Fourteenth Amendment? If so, then the record should be viewed to determine whether substantial evidence before the agency supports its action....

Because a First Amendment claim is involved, the substantiality of evidence supporting School Board's discharge should be further classified to determine whether the District Court must decide the First Amendment claim and hold an evidentiary hearing on whether Principal's exercise of his speech rights was a significant basis for his discharge. In reviewing School Board's record, the reasons given for Principal's discharge may prove to be clearly insubstantial, substantial *and* sufficient, or substantial but insufficient. If the reasons are substantial and sufficient, the District Court need not consider or receive evidence on the First Amendment claim. If clearly insubstantial, the District Court must consider and receive evidence on the First Amendment claim. Likewise, the Court must hear evidence on the First Amendment allegation for substantial but insufficient reasons....

*Stapp v. Avoyelles Parish School Board*, 545 F.2d at 534 (citations and footnotes omitted, emphasis in original).

■ After reviewing the transcript and the exhibits filed by the defendants the Court permitted, in an abundance of caution, the parties to present additional evidence on the plaintiff's claim. It was agreed by the parties to present the case on the record of the school board, depositions, and any further testimony that was not brought out at the school board hearing.

The Court has reviewed the record, depositions, and testimony presented at the hearing and finds that the decision of the board was supported by substantial evidence. The evidence was uncontradicted that the plaintiff repeatedly disregarded the directives of her supervisors. She admitted leaving the campus during a preparation period after being told that her request was denied. She did not attend the August 29, 1978, in service meeting when directed to do so, she did not fill out the individual personnel form required for accreditation by the Southern Association, and she walked out of her evaluation. The Court is aware that the plaintiff believed that her actions were justified under the circumstances. The role of the Court, however, is not to reweigh the evidence. The Court must decide whether the board's decision was supported by substantial evidence. The Court easily finds that it was.

■ The next step in the analysis is to determine whether the reasons relied on by the board were substantial *and* sufficient as the plaintiff has a first amendment claim. *See Stapp v. Avoyelles, supra* at 527. A thorough examination of the record convinces the Court that the reasons were sufficient. "Where there is no allegation of unequal treatment or selective enforcement and where the stated reason is itself sufficient to justify the discharge, [the Court] see[s] nothing to be gained ·from [considering] evidence on the First Amendment claim." *Robison v. Wichita Falls & North Texas Community Act. Corp.*, 507 F.2d 245, 255 (5th Cir. 1975). In the case at bar, there is no argument that the school board treated Ms. Heins differently than any other teacher who disregarded the directives. The reasons for the discharge were not a mere pretext for the termination. Since the Board's decision was supported by substantial and sufficient evidence, it is unnecessary for the Court to consider the evidence on the plaintiff's first amendment claim.[2]

---

2. Evidence was received on the first amendment claim at the school board hearing and at the hearing in the district court. The Court makes the alternative finding that, assuming the plaintiff's speech and conduct were protected under the first amendment, the exercise of these rights was not a substantial or motivating factor inducing the discharge. *See Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1971); *Brown v. Bullard Independent School District*, 640 F.2d 651, 653 (5th Cir. 1981), U.S. appeal pending. Those first amendment activities included processing grievances against the

## IV. CONCLUSION

The Court finds that the plaintiff's fourteenth amendment rights were not violated by the defendants, and that the decision of the school board was supported by substantial and sufficient evidence and therefore judgment must be for the defendants.

administration both on behalf of herself and the Beaumont Federation of Teachers.

Furthermore, although plaintiff was unrestricted at the school board hearing and at the district court hearing, she failed to show with any specificity which acts were protected by the first amendment, or that they were protected.