**Elby WILLIAMS, Plaintiff,**

v.

**The CITY OF ALBANY, a municipal corporation, Nicholas M. Meiszer, Norman Denney, John Lodge, Jim Thurman, and Joel Downs, Defendants.**

**No. Civ. 87–78–ALB/AMER(DF).**

United States District Court, M.D. Georgia, Albany/Americus Division.

May 23, 1990.

Thomas E. Pujadas, Ocilla, Ga., for plaintiff.

Jerry W. Brimberry, Thomas S. Chambless, Albany, Ga., for defendants.

FITZPATRICK, District Judge.

Plaintiff Elby Williams filed the above styled complaint alleging that defendants deprived him of his rights in violation of 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. All the defendants answered plaintiff's charges and then a motion for summary judgment was filed on behalf of defendants City of Albany, Nicholas Meiszer, Norman Denney, John Lodge, and Jim Thurman (defendants) which the court will now address.

## FACTUAL BACKGROUND

On June 16, 1986, City of Albany policemen interviewed defendant Joel Downs about his possible connection with a drug

and juvenile sex ring allegedly headed by one E.B. Kinney. During the questioning, defendant Downs indicated that he had been sexually abused when he was a minor. Although there is a dispute over who initially mentioned the plaintiff's name, the discussions that the police had with defendant Downs resulted in the plaintiff being implicated as one of three Albany policemen who allegedly sexually molested Downs when he was a minor on or about October 16, 1975.

The sexual abuse allegation against the plaintiff was brought to the attention of the Albany Chief of Police, defendant Norman Denney. Denney instructed defendants John Lodge and Jim Thurman, City of Albany police officers, to investigate the charges against plaintiff and then turn over the information they gathered to the district attorney's office. The district attorney used information defendants Lodge and Thurman had collected about the plaintiff to procure a grand jury indictment of the plaintiff on criminal sodomy charges on October 14, 1986. The district attorney sought the indictment despite the fact that the four year statute of limitations covering the alleged criminal sodomy had run. Plaintiff was arrested pursuant to the indictment and released on bond later that same day.

On November 3, 1986, defendant Denney notified the plaintiff that he was being placed on suspension pending a pretermination hearing for violating O.C.G.A. § 16–6–2 (1988) (Georgia's criminal sodomy statute) and Albany Police Department's Standard Operating Procedures in effect at that time, SOP 240, page 16, Article 24.[1]

On November 10, 1986, the City of Albany held a pretermination hearing for the plaintiff that was presided over by defendant Meiszer, Albany City Manager. At the hearing plaintiff was represented by counsel and given the opportunity to both hear the charges against him and testify on his own behalf. Upon the conclusion of the pretermination hearing, defendant Meiszer upheld plaintiff's suspension and affirmed his firing.

Plaintiff was never adjudged to have committed the alleged criminal sodomy. Plaintiff filed a motion to dismiss the criminal action because it was barred by the applicable statute of limitation. At the request of the district attorney, an order of *nolle prosequi* was entered on the indictment on January 28, 1987, and the criminal sodomy charges against plaintiff were dismissed.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure allows for the granting of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Upon motion and after adequate time for discovery, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A movant may discharge his burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 326, 106 S.Ct. at 2554. The evidence and all factual inferences, however, must be viewed in the light most favorable to the nonmovant. *Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637, 638 (11th Cir.1984).

■ The court will first address defendants' request that they be granted summary judgment in regard to the allegations made in count IV of Plaintiff's First Amendment to Complaint. Plaintiff states in count IV of his amended complaint "that if in fact, the Defendants, other than Downs, were unaware that the allegations

---

**1.** SOP–240, page 16, Article 24 stated that "[m]embers of the department will be honest at all times. Members of the department will not violate any criminal law or be involved in any immoral or disorderly conduct."

made by Downs against the Plaintiff were false, such remaining Defendants completely failed to reasonably and prudently investigate such allegations and further neglected to investigate such allegations as a reasonable prudent person clothed with law enforcement and governmental responsibilities and authority would have." Plaintiff's First Amendment to Complaint, ¶ 35. Despite plaintiff's protestation otherwise, the court finds that count IV of Plaintiff's First Amendment to Complaint amounts to a claim for relief based on the alleged negligence of the defendants.

Liability under § 1983 will not be found to exist where a government official is merely negligent in causing an injury. *See Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). "Instead, what is required is a showing that the defendant official acted 'deliberately,' a choice of words which implies both a volitional choice to act or not act, and an awareness that the act is certain or substantially certain to deprive the plaintiff of life, liberty, or property." *King v. Evans*, 640 F.Supp. 107, 108 (N.D.Ga.1986) (citing *Davidson v. Cannon*, 474 U.S. 344, 354 n. 2, 106 S.Ct. 668, 673 n. 2, 88 L.Ed.2d 677 (1986)). Plaintiff's count IV on its face fails to make such charges against the defendants but rather clearly seeks to hold them liable for negligent acts. Accordingly, defendants' request for summary judgment concerning count IV of Plaintiff's First Amendment to Complaint is GRANTED.

■ The court will next consider defendant City of Albany's request for summary judgment on the remaining claims plaintiff asserts against it. Plaintiff contends that the City of Albany is liable in the instant case because Albany police officers Thurman and Lodge manufactured frivolous criminal charges against him and because defendant Meiszer, acting on behalf of the City, denied plaintiff procedural due process in terminating his employment. Brief

in Support of Plaintiff's Objection to Defendants' Motion for Summary Judgment, p. 13. Defendant City of Albany counters that plaintiff has no basis for bringing suit against it because plaintiff has failed to demonstrate that the City has violated any of the plaintiff's Constitutional rights.

In determining whether the City of Albany is entitled to judgment as a matter of law, the court notes that a municipality cannot be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The "official policy" mandate of *Monell* insures that a municipality is held accountable under § 1983 only for its actions and not the acts of its employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Municipal liability will not be found to exist under a theory of *respondeat superior* in a § 1983 action. *Id.* Nor can official municipal policy be established by proof of the occurrence of a single, incident of unconstitutional activity. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 825, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

The evidence plaintiff presents in support of his claim that the City of Albany violated his Constitutional rights based on the actions of defendants Thurman and Lodge indicates that plaintiff is attempting to hold the City liable under a theory of *respondeat superior*. All plaintiff has shown in support of that claim is that defendants Thurman and Lodge were City of Albany policemen when they allegedly manufactured criminal charges against plaintiff. Plaintiff fails to provide any link or causal connection between the alleged acts of defendants Thurman and Lodge and a policy, practice, or custom of the City of Albany.[2] Plaintiff also does not demon-

---

**2.** Plaintiff agrees that more than a single wrongful act is necessary to establish a policy capable of imposing liability upon the City and states in his brief that "quite candidly, no such evidence of multiple occurrences exist in this case rela-

tive to the Defendant officers in wrongfully 'manufacturing' the charge against plaintiff which led to his termination." Brief in Support of Plaintiff's Objection to Defendants' Motion for Summary Judgment p. 14.

strate that the acts of defendants Thurman or Lodge were officially sanctioned or ordered by the City of Albany. In short, plaintiff's § 1983 claim against the City of Albany, based on the actions of defendants Thurman and Lodge, fails to withstand the City of Albany's motion for summary judgment because plaintiff has not made a showing sufficient to establish that an official policy or practice of the City of Albany caused a deprivation of his Constitutional rights.

The actions of defendants Thurman and Lodge are not the only basis upon which plaintiff contends the City of Albany is liable to him under § 1983. Plaintiff asserts that defendant Meiszer's actions, on behalf of the City, in conducting pretermination hearings and actually terminating plaintiff were accomplished as part of a policy of the City of Albany which resulted in both the City and Meiszer depriving plaintiff of his Constitutional procedural due process rights.[3] Brief in Support of Plaintiff's Objection to Defendants' Motion for Summary Judgment p. 14. Defendant City of Albany asserts that, as a matter of law, plaintiff was afforded all the due process he was legally entitled to receive; therefore the City caused no deprivation of plaintiff's Constitutional rights.

In examining whether a deprivation of rights has in fact occurred as a result of the manner in which the City of Albany conducted its pretermination hearings, the court must first determine how much due process, if any, plaintiff was entitled to receive. Plaintiff's due process rights are initially linked to whether he had a valid expectation of continued employment with the City of Albany which created a property right. *Board of Regents v. Roth,* 408 U.S. 564, 576–578, 92 S.Ct. 2701, 2708–2709, 33 L.Ed.2d 548 (1972).

The parties in the instant action have devoted very little discussion to the question of whether or not plaintiff had a property right in continued employment worthy of due process protection. Nevertheless, the court finds that a review of the City's procedure for discharging its police officers indicates that plaintiff did have enough of an expectation in continued employment to warrant minimum due process protection. *See Glenn v. Newman,* 614 F.2d 467, 472 (5th Cir.1980).

The minimum due process requirements that must be afforded an employee in a situation similar to that which exists in the instant case are found in *Glenn.* The court in *Glenn* mandated that, prior to termination, the employer should grant the employee the following:

> [W]ritten notice of the reasons for termination and an effective opportunity to rebut those reasons. Effective rebuttal means giving the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision.

*Glenn,* 614 F.2d at 472 (citing *Thurston v. Dekle,* 531 F.2d 1264, 1273 (5th Cir.1976), *vacated on other grounds,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978)). The employer can satisfy the requirements laid out in *Glenn* and updated in *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), by providing the employee with a properly conducted pretermination hearing. *See Kelly v. Smith,* 764 F.2d 1412, 1414 (11th Cir.1985).

The Supreme Court, in *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495 dictated the requirements of a properly conducted pretermination hearing as follows:

> [T]he pretermination 'hearing' though necessary, need not be elaborate. ... In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action ... [and it] need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe

---

**3.** This allegation forms the basis of plaintiff's complaint against both defendant City of Albany and defendant Meiszer. Therefore, although the proceeding language will speak of the City of Albany, disposition of the issue will determine the outcome of the summary judgment motion filed on behalf of both defendant City of Albany and defendant Meiszer.

that the charges against the employee are true and support the proposed action.

■ In noting that "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved ...," *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)), the court finds that reliance on the pretermination hearing requirements as set forth in *Loudermill* is warranted in the instant case because those requirements encompass all the due process requirements that the City of Albany need afford the plaintiff in this action. Plaintiff in the case *sub judice* has not demonstrated, and the court fails to find, that he was due any more than minimum due process rights to protect the property interest he has shown he possessed.[4] Defendant City of Albany has demonstrated, and the court does find, that the City, in terminating plaintiff, gave him all the procedural due process rights he was entitled to receive. The uncontroverted evidence and undisputed facts of this case clearly show that prior to termination, plaintiff was given written notice of the reasons for his proposed termination and an effective opportunity to rebut those reasons.

Plaintiff argues that even though he was given notice of the reasons for his termination and an opportunity to rebut those reason, he nevertheless was denied procedural due process rights owed to him because the City actually conducts its pretermination hearings in a biased and unfair manner. Plaintiff bases that charge on his allegations that defendant Meiszer, acting on behalf of the City of Albany, prejudged evidence; made *ex parte* determinations; used discredited evidence; misapplied disciplinary regulations and standards or applied them *ex post facto;* and engaged in other activities that denied plaintiff a full and fair hearing.

■ Plaintiff's charges that Meiszer prejudged his case before holding the preter-

mination hearing rests on Meiszer's deposition testimony that before convening pretermination hearings, Meiszer often discusses the grounds for an employee's discharge with the department head who recommended termination. Meiszer deposition p. 42. Defendant City of Albany does not dispute that fact. The court finds that a discussion of that type, unsupported by any credible evidence that it caused any bias on the part of Meiszer or resulted in plaintiff receiving an unfair hearing, fails in the instant action to create an issue of material fact concerning whether the City of Albany deprived plaintiff of his constitutional due process rights.

Plaintiff attempts to support the remaining allegations against the City, and demonstrate the existence of a genuine issue of material fact concerning whether he received a fair hearing, by primarily relying on carefully selected excerpts from Meiszer's deposition and the pretermination hearing transcript. A careful and complete reading of the respective deposition and transcript however, reveals that when viewed in their proper context, the excerpts plaintiff cites fail to demonstrate the existence of a material issue of fact concerning whether or not he received a full and fair hearing from the City of Albany.

In noting that "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e); the court finds that, plaintiff's numerous allegations of impropriety on the part of defendant Meiszer and the City of Albany fail to demonstrate that any genuine issues of material fact exist concerning his claim that defendants Meiszer and the City of Albany deprived him of any of his Constitutional rights. Accordingly, having already found that the City of Albany cannot be held liable for the alleged acts of defendants Thurman and Lodge, the court hereby GRANTS the summary judgment

---

4. Plaintiff's claim to due process protection of his expectation of employment is primarily based upon the City's policy of granting pretermination hearings—a policy specifically designed to comport with the mandates of *Loudermill.*

motion filed on behalf on of the City of Albany. Furthermore, the summary judgment motion filed on behalf of defendant Meiszer is also GRANTED.

■ The court now turns its attention to the summary judgment motion filed on behalf of defendants Thurman, Lodge, and Denney. Those defendants argue that they are entitled to summary judgment because qualified immunity protects them from liability since the acts they are alleged to have committed did not violate clearly established statutory or constitutional rights which a reasonable person should have known. Plaintiff alleges that defendants, Thurman, Lodge, and Denney (hereinafter "remaining defendants") violated his Fourth, Fifth, and Fourteenth Amendment Constitutional rights by instigating and pursuing a frivolous, false and unwarranted criminal investigation aimed at him and by causing an indictment charging him with the offense of sodomy to be issued against him which ultimately resulted in his termination from the City of Albany police department.

In order for the court to grant the summary judgment motion of the remaining defendants, they must establish that they are entitled to summary judgment, as a matter of law, through qualified immunity and that no genuine issues of fact relevant to that question of law exist. *Hudgins v. City of Ashburn, Ga.*, 890 F.2d 396, 403 (11th Cir.1989). To avoid summary judgment, plaintiff must show that the remaining defendants are not entitled to qualified immunity as a matter of law or demonstrate the existence of a genuine issue of material fact concerning whether the remaining defendants are entitled to qualified immunity as a matter of law. *Id.* at 404.

The Supreme Court's test for the application of qualified immunity rests on whether the government official performing discretionary functions violated clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The allocation of proof used in

this circuit for applying that test is set out in *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir.1988), where the Eleventh Circuit applies what it terms the *Zeigler* analysis; derived from the case of *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983) (per curiam). That analysis reads as follows:

1. The defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'

2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional law.'

*Rich*, 841 F.2d at 1563–64 (citing *Zeigler*, 716 F.2d at 849). There is no dispute in this action that the remaining defendants were acting in their official capacity. Therefore, the court moves on to the second analytical step of the *Zeigler/Rich* test.

"[T]here are two questions of law that must [be] decide[d] in completing the second step of the *Zeigler* analysis:

ascertainment of the law that was clearly established at the time of the defendant's action, and a determination as to the existence of a genuine issue of fact as to whether the defendant engaged in conduct violative of the rights established by that clearly-established law."

*Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir.1988).

In further clarification of the second step of the *Zeigler* analysis, the Eleventh Circuit Court of Appeals went on to state:

we also recognize that if the legal norms allegedly violated were as a matter of law clearly established at the appropriate time, a genuine fact issue as to what conduct the defendant engaged in would preclude a grant of summary judgment based upon qualified immunity. In this latter situation the denial or grant of summary judgment turns on the second question of law identified in *Mitchell* [*v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86

L.Ed.2d 411 (1985) ], i.e., do the showings reveal a genuine issue of material fact as to whether the defendant's conduct violated the right accruing to the plaintiff under clearly established law.

*Rich,* 841 F.2d at 1564.

In the case at bar, the court finds that the legal norms allegedly violated by the remaining defendants were, as a matter of law, clearly established at the appropriate time. There can be little doubt that the intentional fabrication of criminal charges and the subsequent submission of those known false charges to a grand jury, violate clearly established rights of which a reasonable person should have known.[5]

The Eleventh Circuit's reasoning in *Rich* guides this court in resolving issues present in the instant case that are similar to those found in *Rich.* In *Rich,* the Eleventh Circuit reviewed a district court's decision to deny summary judgment to a State Attorney's Office investigator being sued under § 1983 for allegedly knowingly submitting a false probable cause affidavit that led to the plaintiff's arrest. The circuit court stated that if in response to the defendant's motion for summary judgment plaintiff had made a showing which established a genuine issue of material fact as to whether defendant's conduct violated plaintiff's clearly established rights, it would agree with the district court's denial of defendant's motion for summary judgment based on its finding of a genuine issue of material fact pertaining to the defendant investigator's conduct. *Rich,* 841 F.2d at 1565. The appeals court, in *Rich,* ultimately determined that plaintiff's one page affidavit in opposition to defendant's motion for summary judgment failed to demonstrate the existence of a material issue of fact concerning the defendant's conduct. *Id.* That ruling was made primarily because plaintiff's "assertions in no way address[ed] the critical factual questions of whether the allegations in the probable cause affidavit were in fact false or how or why [defendant] knew they were false." *Id.* Plaintiff in the instant case has avoided such a pitfall.

Plaintiff has presented evidence which addresses the critical factual questions of whether the investigative data turned over to the district attorney was false and how or why the remaining defendants knew it was false. In doing so, the court finds that the plaintiff has demonstrated the existence of a genuine issue of material fact as to whether the remaining defendants intentionally engaged in conduct violative of plaintiff's clearly established legal rights.

In viewing the evidence and all factual inferences in the light most favorable to the plaintiff, a factual issue exists concerning whether the remaining defendants intentionally fabricated criminal sodomy charges against the plaintiff and knowingly presented information that they knew was false, or should have known was false, to the district attorney. Plaintiff presents evidence that can be interpreted to demonstrate that the charges against him were false;[6] that the remaining defendants knew, or should have known, that the charges were false and helped fabricate them;[7] and that the remaining defendants

---

5. *See Rich,* 841 F.2d at 1565 (investigator's submission of a false probable cause affidavit would have violated clearly established rights of the plaintiff).

6. Examples of evidence plaintiff uses to demonstrate that the charges were false include exhibits which show that defendant Downs gave numerous contradictory statements concerning what allegedly occurred between himself and the plaintiff.

7. Examples of evidence plaintiff uses to demonstrate this point include deposition testimony questioning the credibility of any statements Downs might make and testimony that some

members of the vice squad considered Downs a "nut" and a "pathological liar." Paulk deposition, p. 59, Lodge deposition, p. 67. Plaintiff also cites testimony from which it can be inferred that Downs believed he was going to be charged with a criminal offense and therefore was amenable to the possibility of making a "deal." Pretermination hearing transcript, p. 23. Paulk deposition, p. 85. Other evidence includes the following pretermination hearing testimony of defendant Downs who is being questioned by plaintiff's attorney.

Q. Who brought up Elby Williams's [sic] name first?

A. Not me. . . .

intentionally submitted the false charges to the district attorney and had a motive for doing so.[8] Accordingly, the court finds that a genuine issue of material fact exists concerning whether defendants Thurman, Lodge, and Denney are entitled to qualified immunity as a matter of law. Therefore, the summary judgment motion of defendants Thurman, Lodge, and Denney in regards to their claim of qualified immunity is DENIED.

## CONCLUSION

For the foregoing reasons, the summary judgment motion of defendant the City of Albany and defendant Meiszer is hereby GRANTED as these defendants have shown that there is no genuine issue as to any material fact concerning all of plaintiff's claims against them and that they are entitled to a judgment as a matter of law on all of plaintiff's counts. The summary judgment request of defendants Thurman, Lodge, and Denney, as to the count IV claim found in Plaintiff's First Amendment to Complaint, is hereby GRANTED as the court finds that there are no issues of material fact concerning plaintiff's count IV claim and these defendants are entitled to a judgment on that specific count as a matter of law. As to plaintiff's remaining claims against defendants Thurman, Lodge, and Denney, their summary judgment motion is hereby DENIED as the court finds there are genuine issues of material fact concerning whether defendants Thurman, Lodge, and Denney are entitled to qualified immunity as a matter of law which preclude judgment as a matter of law.

SO ORDERED.

Q. But what I'm saying is: How did all this come up? Did they just pull those initials and name out of thin air, or how did it all come up? A. I simply told John Lodge that there was some people that did things to me when I was a juvenile. And he said, "Well, I know who one of them is." And he used the initials, and I agreed. And then a few weeks later, then the name was brought up. Pretermination Hearing transcript, pp. 31, 33.

8. An example of evidence plaintiff uses to demonstrate this point includes the following deposition testimony of defendant Thurman, who is being questioned by plaintiff's attorney.
Q. During your rap sessions where the case on Elby Williams came up, wasn't it mentioned several times that ya'll had [a] weak case? A. Yes, that's true. Q. Wasn't it mentioned—do you recall who mentioned that? A. I think at different times—I remember Jim said it, I think I made that statement and seems to me like Mack Green [an Albany policeman] might have made that statement, it was said on several occasions. Q. Wasn't the statement made that in several of the officer's [sic] opinion they felt like it was just a drug addict, a homosexual pointing a finger at two officers to keep the heat off his back? A. I don't remember that being said. Now, I remember that we talked about Joel Downs being a drug addict and suspected, you know, naturally it was assumed that he was a homosexual.

Q. Didn't John Lodge make the statement that when those things were said, didn't John Lodge get mad and say that the people that were making that statement didn't know what they were talking about? A. Yes. Q. Did you ever make the statement that Denney was the one who directed you to take it to the Grand Jury to cover their asses if it hits the papers? A. I don't remember saying it exactly like that but I don't mind telling you exactly what Denney told me. Q. Please tell me. A. When this came about I went in there with John on one specific occasion after it had been give [sic] back to us and I want to think John was the one, it might have been me, that was concerned, there just wasn't a lot of evidence, there was these statements, and that we had been, you know, what we had found out and maybe it was before these statements.
But anyway, Denney—I'm almost sure it was before the last statement, it was when we had been given the case back. Denney made the statement that he wanted us to take it to Hobart Hind [Albany district attorney] and let Hobart decide what to do with it. The reason was he didn't want it to ever come out that we had information on a police officer involved in homosexual activity and that an investigation was not conducted and that Hobart was the District Attorney and it should be left up to Hobart to decide what action, if any should be made. Thurman deposition, pp. 109–112.