Gary W. OGLETREE, Plaintiff-Appellee,

v.

L. O. CHESTER, Chief of Police, etc., et al., Defendants-Appellants.

No. 80-7928.

United States Court of Appeals, Eleventh Circuit.

Aug. 16, 1982.

Peter A. Schuller, David E. Betts, Atlanta, Ga., for defendants-appellants.

Guy E. Davis, Jr., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The Chief of Police and the County Manager of Fulton County, Georgia, appeal the district court's decision holding that the appellee's dismissal from his position as a Fulton County police officer denied him his due process rights. We reverse, finding that

the appellee had no property right to continued employment under Georgia law.

## I

Appellee Gary W. Ogletree joined the Atlanta Police Department ("APD") in November 1971. While with the APD, he worked in the unincorporated area of Fulton County.

On April 4, 1975, the Board of Commissioners of Fulton County ("Commission") created a county police force by the enactment of Fulton County Code § 75–301, which became effective July 1, 1975. In order to staff the force, newly appointed Chief of Police L.O. Chester and County Manager Sam Brownlee met with members of the APD, including appellee Ogletree, and urged them to accept employment with Fulton County. The County Manager explained to the officers that the county intended to "make things as commensurate as possible for those officers that did transfer in terms of their compensation, in terms of their pensions and in terms of other job rights," transcript, vol. II, testimony of Sam Brownlee at 127–28, but that they would not initially be "classified employees" under the Fulton County Civil Service Act. Later, Ogletree received a copy of a memorandum, signed by Director of Police Services Herbert Jenkins, which stated: "The Rules and Regulations in the Fulton County Police Department will be the same as they are in the City of Atlanta, until such time as the County Police Department can write and publish new Fulton County Police Department Rules and Regulations."

Ogletree resigned from the APD and joined the Fulton County Police Department on July 1, 1975. After he joined, the department promulgated its own "Policies, Objectives, Rules, and Regulations" ("Regulations"). The Regulations were approved by the Commission on October 12, 1976.

On June 28, 1978, while off duty, Ogletree was involved in an incident which led to his dismissal. He brought suit, alleging that he had been denied due process of law because the termination procedures afforded him were constitutionally insufficient.

The district court agreed with Ogletree and ordered that the appellants pay his court costs and attorney's fees and reinstate him with back pay. The appellants do not contest the district court's holding that the termination procedures were constitutionally insufficient. Instead, they argue that the court erred in finding a constitutionally protected property interest and that the due process clause did not apply to Ogletree's termination.

## II

*Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), established that a "person's interest in a benefit is a 'property' for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.* at 601, 92 S.Ct. at 2699. In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the court considered whether a police officer's employment status was a protected property interest, and its opinion reaffirmed the *Sindermann* language by stating that a "property interest . . . can, of course, be created by ordinance, or by implied contract." *Id.* at 344, 96 S.Ct. at 2077. *Bishop* explained, however, that "the sufficiency of the claim of entitlement must be decided by reference to state law." *Id.*

■ The district court's analysis failed to look to state law as commanded by *Bishop.* We must therefore sift the court's reasoning through the filter of state law to determine whether Georgia recognizes an enforceable expectation of continued employment under the facts of this case.[1] First, we shall examine the facts relied upon by the district court and ascertain what oc-

---

1. Throughout his brief, the appellee has contended that the appellants' failure to comply with Fed.R.Civ.P. 50 forecloses review of the "sufficiency of the evidence" on the issues presented in this non-jury case. To the contrary, that rule poses no bar to our consideration of the issues in this appeal.

curred here that could conceivably have given rise to a "mutually explicit understanding" between Ogletree and Fulton County.

Under the theory sustained by the district court, the oral representations by the County Manager and the Chief of Police (that job rights would be comparable to those provided by the APD) gave rise to an implied contract in effect at the time of Ogletree's dismissal.[2] The court entered a finding of fact that Atlanta police officers faced with a disciplinary proceeding had the right to a hearing before an advisory administrative hearing panel, which made a recommendation to the Public Safety Commissioner, and the right to appeal an adverse decision by the Commissioner to the Civil Service Board, which would hold a de novo hearing. The court thus concluded that the "representations created a 'mutually explicit understanding' that plaintiff had a right to a job unless terminated for cause after a hearing in compliance with minimal due process requirements." *Ogletree v. Chester*, No. C78–2243A, slip op. at 7 (N.D.Ga. August 13, 1980).

The court found that the memorandum from the Director of Police Services confirmed the job rights suggested by the oral representations, but that is not correct. The memo did indicate that standards and procedures established by Atlanta's Rules and Regulations would apply until superseded by Fulton's Regulations. However, according to trial testimony, those hearing and appeal rights which the district court found to have been held by Atlanta police officers resulted not from the Atlanta Police Department's Rules and Regulations, but from additional guarantees provided by the City of Atlanta (by charter or by ordinance). Transcript, vol. 3, testimony of Clinton Chaffin at 193.

Fulton's Regulations, the court found, did not establish a property interest because they were "not explicit enough concerning conduct and disciplinary procedures to fall squarely within the holding" of *Glenn v. Newman*, 614 F.2d 467 (5th Cir. 1980) (finding that city regulations established a protected property interest because they created a reasonable expectation of continued employment absent noncompliance with a specified reason for dismissal). *Ogletree v. Chester*, slip op. at 7. Insofar as the Regulations were consistent with the oral representations, however, the court believed that they supported the existence of a mutually explicit understanding. *Id.* That conclusion, too, must be erroneous. The Regulations do not purport to define the scope of termination procedures to be provided, nor do they establish that dismissal may only be for cause. *See* note 8 *infra*. Consequently, they lend no significant support to the implications of the oral representations made to Ogletree.

We assume that any job rights established by the oral representations would exist after the issuance of the Regulations (*i.e.*, that the representations could create rights in addition to those found in the Regulations.) We thus conclude that the mutually explicit understanding found by the district court represented an implied contract which could have been based only upon the oral representations made to Ogletree. The sufficiency of this theory of entitlement must be evaluated by reference to state law.

## III

■ In Georgia, "[g]enerally, one in public employment has no vested right to such employment[3] ...." *Barnes v. Men-*

---

**2.** Ogletree offered no evidence of a written contract.

**3.** Contrary to implications in the appellee's brief, this rule is unaffected by the institution of Civil Service legislation. Such legislation merely provides one source of statutory entitlement which takes an employee outside the rule. *See Brownlee v. Williams*, 233 Ga. 548, 551, 212 S.E.2d 359, 362 (1975). *See also Foster v.*

*Vickery*, 202 Ga. 55, 60, 42 S.E.2d 117, 120 (1947) ("Both under the rules of the common law and the statute law of force in this State, sheriffs are not restricted in their right to employ and discharge their deputies and employees, and any limitation or restriction which now applies to only one sheriff in this State must be strictly construed ....") (holding that Fulton County Civil Service Board is required

*donsa*, 110 Ga.App. 464, 465, 138 S.E.2d 914, 915 (1964). Unless the employment arrangement is modified by additional contractual or statutory provisions, the "power to hire carries with it the implied power to fire." *Richmond County v. Jackson*, 234 Ga. 717, 719, 218 S.E.2d 11, 12 (1975); *see Brownlee v. Williams*, 233 Ga. 548, 212 S.E.2d 359 (1975). The right to continued employment may arise where there is a guarantee of employment for a fixed term,[4] *see Lentz v. City Council*, 48 Ga.App. 555, 556, 173 S.E.2d 406 (1933), or where the employment allows termination only for cause, *Brownlee v. Williams*, 233 Ga. at 551, 212 S.E.2d at 362 (construing Civil Service Act of Fulton County). To resolve whether this additional right may arise from oral representations,[5] we turn to principles of contract law. *See Jago v. Van Curen*, 454 U.S. 14, ——, 102 S.Ct. 31, 34, 70 L.Ed.2d 13 (1981).

▮ Under Georgia law, any contract entered into with other persons in behalf of a county must be in writing and spread on the official minutes of the Commission. Ga. Code Ann. § 23–1701. Where that procedure is not followed, there is no enforceable agreement.

In *Murray County v. Pickering*, 42 Ga. App. 739, 157 S.E. 343 (1931), the court applied a predecessor of § 23–1701 to hold that an alleged contract between an attorney and a county was unenforceable. The court wrote:

A mere oral agreement is unenforceable even though it be embodied or recited in a resolution decided by the county commissioners and entered on the minutes. Thus, a resolution that a named attorney "is hereby employed" to represent the county in a certain cause, upon terms and conditions therein stipulated, is insufficient, without more, to constitute a binding contract between the county and such attorney, although the resolution is entered upon the minutes and the attorney signifies his acceptance of the employment by tendering performance.

*Id.* at 739, 157 S.E.2d 343. *See also, e.g., Graham v. Beacham*, 189 Ga. 304, 5 S.E.2d 775 (1939) (action by deputy warden of convicts to compel by mandamus the payment of salary).

The strict view reflected in *Pickering* was followed more recently in *Hatcher v. Hancock County Commissioners*, 239 Ga. 229, 236 S.E.2d 577 (1977), where a physician claimed to have a contract of employment (with a hospital authority) that had been submitted to and approved by the county's board of commissioners. In affirming a judgment denying mandamus relief to the physician, the Georgia Supreme Court wrote:

While a person has a legal right to have a written contract made with a county entered on the official minutes, if the contracts are not in writing and not entered on the proper minutes, they are not enforceable.... Any oral understanding [is] not enforceable.

*Id.* at 230–31, 236 S.E.2d at 579 (citations omitted).

▮ The foregoing cases suggest that a person's expectations of employment with a

---

to grant a hearing if a discharged employee complies with the provisions of the Fulton County Civil Service Act dealing with removal for cause of classified employees).

4. This guarantee apparently provides a right to continued employment for public employees other than those who hold a public office:

"Where the tenure of an *office* is not prescribed by law, the power to remove is an incident to the power to appoint. In such case, the appointee holds at the pleasure of the appointing power, although it attempts to fix a definite term; and no formalities such as the preferring of charges or the granting of a hearing to the incumbent are necessary

to the lawful exercise of the authority of removal."
*Lentz v. City Council*, 48 Ga.App. 555, 556, 173 S.E. 406 (1933) (emphasis in original) (quoting *Wright v. Gamble*, 136 Ga. 376, 71 S.E. 795 (1911)).

5. Since there was no written contract here, we are not merely looking to extrinsic circumstances. *Cf. Northeast Georgia Radiological Ass'n v. Tidwell*, 670 F.2d 507 (5th Cir. 1982) (property interest emerged from explicit mutual understandings adjunct to a written contract).

county cannot be enforced when they are a result of representations made by someone believed to have the authority to extend an employment guarantee, whether or not the representations are subsequently ratified.[6] This view of the effect of § 23–1701 is also supported by *Floyd v. Thomas,* 211 Ga. 656, 87 S.E.2d 846 (1955), which held that county commissioners could be enjoined from carrying into effect a purchase contract because it did not meet the requirements of the statute. A county employee had been authorized by the commission to make the purchase, but the Georgia Supreme Court held that the contract was unenforceable since the authorization "was an attempted delegation of the authority of the commission which was illegal since only the board would have the authority to make such a purchase-contract." *Id.,* 87 S.E.2d at 847.

■ Georgia law does not precisely define when an implied contract could give rise to a protected property right. However, where the right asserted involves public employment with a county, state law clearly would not provide any guarantee or entitlement based on the representations made to the appellee.[7] As a matter of state law, there was no enforceable expectation of continued employment based on implied contract; Ogletree held his position at the will and pleasure of those who hired him to work for the county.

## IV

■ Based upon our review of Georgia law, we must reject the grounds upon which the district court rested its holding that the plaintiff was deprived of a property interest in continued employment without being accorded due process. Nor can the decision properly be reached on any of the other grounds asserted by Ogletree at trial.[8] Since there was no entitlement un-

6. Of course, if the ratification fulfills the statutory requirements, it serves to provide an enforceable guarantee by itself.

7. Though he does not explain their relevance, the appellee cites cases stating that § 23–1701 refers only to contracts and that the payment of salaries of county officials and employees is not contractual within the meaning of the statute. *See First National Bank of Atlanta v. Mann,* 211 Ga. 706, 88 S.E.2d 361 (1955); *Polk County v. Anderson,* 116 Ga.App. 546, 158 S.E.2d 315 (1967) (involving appointment for specific term of two years). *But see Templeman v. Jeffries,* 172 Ga. 895, 901, 159 S.E. 248 (1931) (explaining that § 23–1701 does not make the employment of a county officer invalid and void because a public office does not rest on contract but arises from an appointment impliedly authorized by legislative enactment); *Culberson v. Watkins,* 156 Ga. 185, 189, 119 S.E. 319 (1922) ("[T]he right of a public officer for compensation for the performance of duties imposed on him by law does not rest on contract, either express or implied."). What is at issue here is the enforceability of an expectation of continued public employment, not merely the right to compensation for past services rendered, thus the authority cited by the appellee has no bearing on this case.

8. No statutory guarantees were shown. The members of the police force were not classified employees under the Fulton County Civil Service Act until after the appellee was terminated. (Police officers petitioned the county for classified status on December 8, 1978; the Ful-

ton County Personnel Board confirmed their classified status by resolution at a meeting on December 14, 1978).

The district court found that the Regulations approved by the Fulton County Commissioners did not provide a property interest since they were not explicit enough concerning conduct and disciplinary procedures to fall within the decision in *Glenn v. Newman.* We believe that conclusion is supported by sound reasoning.

In *Glenn,* the rules provided that a career officer or employee could be separated or discharged from the service for delinquency, misconduct, inefficiency, or inability to perform the work satisfactorily, and one rule listed a number of violations that might warrant dismissal. See 614 F.2d at 471 & n.2. The Fifth Circuit concluded:

On their face, the regulations may fairly be read as creating a reasonable expectation of continued employment absent noncompliance with one of the specified reasons .... Reading the regulations in their entirety to glean the expectations of the parties involved, we conclude that the specified reasons listed in the regulations are meant to be analogous to allowing termination only "for cause" [as the civil employment guidelines did in *Brownlee*]. Indeed, the regulations specifically provide that suspension, listed along with dismissal as a type of discipline to which an employee may be subjected, may occur only "for cause." Moreover, the review procedure provided by the city indicates the mutual understanding that an employee may be discharged only for "cause" and has a right to challenge that "cause."

der state law, the Federal Constitution does not invoke its procedural due process protections. *E.g., Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Accordingly, the district court's decision is

REVERSED.

*Id.* at 471- 72.

Here, scattered through the Fulton County Police Department's "Policies, Objections, Rules and Regulations," there are a few types of activity for which specific sanctions are mentioned: indictment for or conviction of any criminal offense (Rule 2.5: "it shall be deemed grounds for dismissal . . . ."); striking or similar action (Rule 6.1: "[i]t is the policy of this Police Department to seek removal from office" any officer involved in such activity); and maliciously mistreating prisoners (Rule 7–16: employee "shall be subject to suspension or dismissal."). There is, however, no single rule specifying the reasons for which an officer might be discharged, no list of violations that might warrant dismissal. Instead of allowing termination only for cause, the rules merely emphasize that certain misconduct will not be tolerated. There is no suggestion that there would not be other reasons for dismissal or, indeed, that any conduct-related reason to dismiss would be needed. To this extent, this case is quite similar to *McMillian v. City of Hazlehurst*, 620 F.2d 484 (5th Cir. 1980) (arising in Mississippi). There, a city ordinance governing police conduct contained a rule which stated: "Any member of the department guilty of violating these rules and regulations will be subject to reprimand, suspension or dismissal." *Id.* at 485. The Fifth Circuit rejected the former officer's claim that the rule gave police officers a protected property interest:

> The language of the [rule] . . . does not purport to limit the municipality's employment rights or abrogate the application of Miss. Code Ann. § 21–3–5 [, which permits the municipality] to discharge police employees without cause. *The ordinance nowhere undertakes to make its provisions the exclusive basis for dealing with Hazlehurst police officers. It would be entirely unreasonable to imply such a limitation from the fact that specific rules of conduct were made enforceable by reprimand, suspension or dismissal. Id.* (emphasis added).

Moreover, unlike the regulations in *Glenn*, there is no "for cause" requirement specified for any type of discipline in Fulton County's Regulations. Policy 11, the only provision devoted to discipline, states:

> It is essential that public confidence be maintained in the ability of the Fulton County Police Department to investigate and properly adjudicate complaints against its members. The Police Department has the responsibility to seek out and discipline those whose conduct discredits the Police Department or impairs its effective operation. The rights of the employees as well as those of the public must be preserved, and any investigation or hearing arising from a complaint must be conducted in an open and fair manner. The Fulton County Department accepts complaints against its members and fully investigates all such complaints to the appropriate disposition.

This provision, one easily concludes, is directed at establishing the proposition that complaints against police officers will be investigated and that resulting investigations or hearings will be run fairly. It does not, however, assure that a hearing will have any particular contours or involve any specific procedures. Nor does it restrict the types of conduct which are grounds for dismissal or other discipline; indeed, it in no way guarantees that dismissal will result only from noncompliance with the standards for conduct established by the other provisions of the regulations. *Cf. Harrison v. Housing Authority*, 445 F.Supp. 356 (1978), *aff'd on the basis of the district court's opinion*, 592 F.2d 281 (5th Cir. 1979) (arising in Georgia) (No "for cause" requirement was established by the language of a policy that provided, *inter alia*, that "[d]ue consideration will be given all facts in any given situation.")

At oral argument, some question was raised whether the resolution creating the Fulton County Police Department could be used to interpret the regulations to determine whether they establish a "for cause" requirement; the resolution stated that the procedures to be developed should provide for "employee benefits commensurate with existing County policies," and it has been argued that most Fulton County employees are entitled, under the Civil Service Act, to a due process hearing before termination. This approach does not aid the appellee.

First, there is no cause to look beyond the Regulations themselves. They were the final product and the full expression of the development of the procedures referred to in the resolution. While the regulations may be consistent with the concept of a "for cause" requirement, they unambiguously do not create such a requirement, as we have indicated.

Moreover, even if the Regulations were ambiguous, it is unreasonable to believe that a "for cause" requirement could be established by virtue of the language in the resolution. Fulton County employees are entitled to a due process hearing, under *Brownlee*, on account of the "for cause" requirement (pertaining to the employment of classified employees) in the Civil Service Act. It is unlikely that the Commission would have intended that the Regulations, which were to be developed by the County Manager and the Police Chief under the mandate of the Resolution, should provide for a

specific benefit which arises on behalf of most Fulton County employees as a result of a broad Civil Service program in which the police force was not originally included. It is more likely that the Commission intended for the County Manager to develop a plan or procedure by which the police force would be brought under the Civil Service Act. (There was testimony that the county wished to avoid hiring restrictions imposed by the Act when the force was started.)

Furthermore, as the appellants argue, the resolution does not seem to be a proper source of legislative history under Georgia law. It is not the valuable guide to legislative intent that changes in a statute may be. This is especially true here since the Regulations were not developed by the Commission, though it did approve them.

We could not hold that the regulations here "are meant to be analogous to allowing termination only 'for cause,'" *Glenn*, 614 F.2d at 471–72, so that a property interest is created. Such a result under these facts would reach far beyond the contemplation of *Brownlee*, the lone interpretation of Georgia law giving direct guidance on the establishment of a property right from a "for cause" requirement.