Raymond D. HARRISON, Jr., Plaintiff,

v.

CITY OF ADAIRSVILLE, Dennis F. Williams, Earl Towe, Odell Adcock, Jimmy Mealor, and Roger M. Fletcher, Defendants.

Civ. A. No. C82–165R.

United States District Court,
N.D. Georgia,
Rome Division.

March 18, 1983.

David Archer, Cartersville, Ga., for plaintiff.

N. Sandy Epstein, Atlanta, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

The plaintiff, Raymond Harrison, brought this action against the City of Adairsville and several of its elected officials, contending that he was discharged from the Adairsville Police Department without due process of law. The defendants disagree and presently move for summary judgment under Fed.R.Civ.P. 56(c).[1]

---

1. Fed.R.Civ.P. 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." All facts are construed in the light most favorable to the non-moving party, the plaintiff in this case. *See United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294 (11th Cir.1983); *Mazo v.*

They argue alternatively that Harrison does not have a property interest in continued employment which is protectible under the fifth and fourteenth amendments of the United States Constitution, Harrison could not have been deprived of any property right in continued employment because he voluntarily resigned, and Harrison's action is barred because the defendants enjoy immunity from prosecution in this case. Because the Court agrees with the defendants' first contention, it finds it unnecessary to decide the latter two issues.

## I. DOES THE PLAINTIFF POSSESS A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST IN EMPLOYMENT?

█ In order to be afforded the due process protections of the fifth and fourteenth amendments, a person must possess a constitutionally protected liberty or property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 572, 576–78, 92 S.Ct. 2701, 2706, 2708–09, 33 L.Ed.2d 548 (1971); *Best v. Boswell,* 696 F.2d 1282 at 1288 n. 5 (11th Cir.1983). A constitutionally protected property interest in employment arises, of course, if a written contract of specified duration evidences the employment relationship. Such a property interest can also arise, however, if the employment relationship is created by statute, municipal ordinance, "mutually explicit understandings" between an employer and an employee or implied contract. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *see Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Durham v. Jones,* 698 F.2d 1179 at 1181 (11th Cir.1983). To determine the constitutional sufficiency of a claimed property interest in employment, reference must be made to state law. *See Bishop, supra.*

Two recent cases, which involved factual situations similar to the present case, grappled with the question whether a constitutionally protected property interest in employment existed. In *Glenn v. Newman,* 614 F.2d 467 (5th Cir.1980), the plaintiff, a police officer, was dismissed from the La-Grange, Georgia Police Department. Glenn did not have a formal contract of employment with the city, but argued that the police department regulations which governed his conduct as an officer created a constitutionally protected property interest in employment.

The court found three of these regulations particularly important in light of Glenn's contention. The first was Regulation 4.2. It listed twenty offenses which, if committed by an officer, would subject him to dismissal. *Id.* at 469 n. 2.[2] The second

---

*United States,* 591 F.2d 1151, 1155–56 (5th Cir. 1979). And summary judgment is inappropriate when the parties agree on the material facts but disagree about factual inferences. *See Warrior Tombigbee, supra.*

2. Regulation 4.2 provides:
4.2 An employee who does not perform his work at an acceptable level of competence as determined by his supervisor or who violates the rules, regulations, procedures is guilty of conduct detrimental to the good order, efficiency and discipline of the department and may be suspended, disciplined, dismissed, demoted by the Chief of Police for violating rules regulations or for any of the following offenses:
a. The commission of a felony, misdemeanor, or violation of a city ordinance.
b. Habitual indulgence in narcotics or drugs
c. Using intoxicants in violation of these rules
d. Neglect of duty or failure to report for duty

e. Disobedience of, or failure to comply with, any order as defined herein or any other special order, general order, rule, or regulation.
f. Absent from duty without leave
g. Conducting [sic] unbecoming an officer which might be detrimental to the service
h. Willful mistreatment of a prisoner
i. Sleeping while on duty
j. Accepting or soliciting a bribe
k. Aiding or permitting a prisoner to escape
l. Immorality
m. Appropriating any lost, found, stolen, or departmental evidence property to his own use
n. Falsification of reports, records, or communications
o. Improper political activity
p. Feigning sickness or injury to escape duty
q. Rough or careless handling of city property

was Regulation 4.3. It defined the types of sanctions that could be imposed after a violation of a regulation occurred, specifically defining suspension as "the temporary removal of an employee from the [police force] *for cause* for a specified period of time not to exceed 30 calendar days." *Id.* at 469 n. 2. (emphasis added).[3] The last regulation the Court emphasized was Regulation 5.0, which provided discharged employees with an appeal procedure. *Id.*[4]

In deciding whether these regulations created a constitutionally protected interest in continued employment, the court referred to Georgia law (as mandated by *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)). It noted that in Georgia "civil employment which allows termination only 'for cause' creates an expectation of continued employment that is constitutionally protected." *Glenn, supra,* at 471 (citing *Brownlee v. Williams,* 233 Ga. 548, 212 S.E.2d 359 (1975)). The court then read "the regulations in their entirety to glean the expectations of the parties involved," and held that the regulations, in effect, established a for cause termination requirement. *Id.* at 471.

The court held that Regulation 4.3—which listed twenty offenses that might warrant an officer's dismissal—was "meant

r. Any other act or omission to act contrary to good order and discipline of the department

s. Dangerous misuse of firearms

t. Accumulation of violations or infractions of departmental rules and regulations which may indicate an officer or employee's inability to conform to the rules and regulations of the Department.

**3.** 4.3 Types of Discipline

A. Suspension—is the temporary removal of an employee from the services for cause for a specified or period of time not to exceed 30 calendar days. A suspended employee shall not receive pay or be permitted to use privileges or benefits during the suspension period.

\* \* \* \* \* \*

A written statement of the reasons for any suspensions shall be furnished and discussed with the employee by the Chief of Police and a copy of the statement filed with the City Manager.

B. Demotion—is the reduction within the salary range as provided in the pay plan or a reduction to a lower grade at a reduced rate of pay. An employee may be demoted for disciplinary reasons by the Chief of Police. A written report shall be furnished and discussed with the employee and a copy filed with the City Manager prior to the effective date of such action.

C. Dismissal—An officer or employee may be separated, discharged from the service for delinquency, misconduct, inefficiency, or inability to perform the work satisfactorily. Dismissals or career service employees effective only after the Chief of Police has presented and discussed the reasons for such discharge with the employee and filed a written copy of the action to the City Manager.

**4.** 5.0 APPEALS AND GRIEVANCE PROCEDURE

It is the policy of the City of LaGrange to foster employee satisfaction and to give careful consideration and attention to any complaint or grievance on any matter concerning an employee's status, discipline or conditions of employment.

Appeal—An appeal may be filed on any action taken by employee's supervisor affecting his status, i.e. promotion, demotion, suspension and disciplinary action. An employee who has a complaint or grievance should first try to settle through discussion with his immediate supervisor and the Chief of Police. Every effort should be made to find an acceptable solution by informal means at this level of supervision.

5.1 Procedure for Appeal—A career employee who has been adversely affected by a personnel action by his supervisor may file an appeal in writing to the City Manager within seven (7) calendar days of receipt of notification of such action by the employee's supervisor. The appeal shall be in writing and shall contain the employee's name, position, title, department, home address, a statement as to why the appeal is being filed and such other information needed to support the appeal.

5.2 Review—The City Manager shall review the appeals with the employee, the supervisor and the department head in an effort to resolve the complaint or grievance. If the complaint or grievance cannot be resolved at this level, the City Manager shall within five (5) days after the conference make a recommendation to the Mayor and Council at a hearing on the issues be held by the Council. The Mayor and Council at its next regular meeting will set a date for hearing the appeal.

5.3 Hearing—The Mayor and Council shall hear the appeal under the procedures set forth in Section 5 of the Personnel Policies of the City of LaGrange.

to be analogous to allowing termination only for 'cause'" because an officer could reasonably expect to remain employed unless he violated one of these offenses. *Id.* at 471–72. The court also noted that the regulation defining suspension explicitly stated that an officer could only be suspended for cause. *Id.* at 472. Additionally, it stated that "the review procedure provided by the city [in Regulation 5.0] indicates the mutual understanding that an employee may be discharged only for 'cause' and has a right to challenge that 'cause.'" *Id.* Thus, the court concluded that "Glenn has demonstrated a property interest in continued employment sufficient to invoke minimum due process protection." *Id.*

Another recent case, *Ogletree v. Chester,* 682 F.2d 1366 (11th Cir.1982), involved the dismissal of a police officer from the Fulton County Police Department. Although the *Ogletree* court's main holding—that a constitutionally protected expectation of continued employment did not arise from oral representations made by a county official—is not relevant to the present case, its discussion of whether the Fulton County Police Department regulations created a constitutionally protected property interest in employment is pertinent. The court's discussion, which is stated in footnote eight, is lengthy, but will be quoted in full because of the light it sheds on the present issue:

The district court found that the [police department] Regulations approved by the Fulton County Commissioners did not provide a property interest since they were not explicit enough concerning conduct and disciplinary procedures to fall within the decision in *Glenn v. Newman.* We believe that conclusion is supported by sound reasoning.

Here, scattered through the Fulton County Police Department's "Policies, Objections, Rules and Regulations," there are a few types of activity for which specific sanctions are mentioned: indictment for or conviction of any criminal offense (Rule 2.5: "it shall be deemed grounds for dismissal. . . ."); striking or similar action (Rule 6.;" "[i]t is the policy of this Police Department to seek remov-

al from office" any officer involved in such activity); and maliciously mistreating prisoners (Rule 7–16; employee "shall be subject to suspension or dismissal."). There is, however, no single rule specifying the reasons for which an officer might be discharged, no list of violations that might warrant dismissal. Instead of allowing termination only for cause, the rules merely emphasize that certain misconduct will not be tolerated. There is no suggestion that there would not be other reasons for dismissal or, indeed, that any conduct-related reason to dismiss would be needed.

Moreover, unlike the regulations in *Glenn,* there is no "for cause" requirement specified for any type of discipline in Fulton County's Regulations. Policy 11, the only provision devoted to discipline, states:

It is essential that public confidence be maintained in the ability of the Fulton County Police Department to investigate and properly adjudicate complaints against its members. The Police Department has the responsibility to seek out and discipline those whose conduct discredits the Police Department or impairs its effective operation. The rights of the employees as well as those of the public must be preserved, and any investigation or hearing arising from a complaint must be conducted in an open and fair manner. The Fulton County Department accepts complaints against its members and fully investigates all such complaints to the appropriate disposition.

This provision, one easily concludes, is directed at establishing the proposition that complaints against police officers will be investigated and that resulting investigations or hearings will be run fairly. It does not, however, assure that a hearing will have any particular contours or involve any specific procedures. Nor does it restrict the types of conduct which are grounds for dismissal or other discipline; indeed, it in no way guarantees that dismissal will result only from

noncompliance with the standards for conduct established by the other provisions of the regulations.

We could not hold that the regulations here "are meant to be analogous to allowing termination only 'for cause,'" *Glenn,* 614 F.2d at 471–72, so that a property interest is created. Such a result under these facts would reach far beyond the contemplation of *Brownlee,* the lone interpretation of Georgia law giving direct guidance on the establishment of a property right from a "for cause" requirement.

*Ogletree, supra,* at 1372 n. 8 (citations omitted). *See also McMillan v. City of Hazlehurst,* 620 F.2d 484 (5th Cir.1980).

■ Summarizing the *Glenn* and *Ogletree* cases, this Court finds the following considerations relevant to the determination of a "for cause" termination requirement: 1) the existence of regulations extensively defining conduct which might warrant dismissal; 2) the existence of regulations explicitly referring to a "for cause" requirement, and 3) the existence of regulations which provide review procedures for a discharged employee.

■ In the present case the plaintiff did not sign a formal contract of employment with the City of Adairsville. Nor is he covered by a civil service act similar to the act construed in *Brownlee v. Williams,* 233 Ga. 548, 553, 212 S.E.2d 359 (1975), which contains a "for cause" termination requirement.[5] The City of Adairsville Police Department has adopted a set of regulations,[6] however, and they begin with the following preamble:[7]

This is the new SOP for the Adairsville Police and Fire Departments. If you do not abide by the policies set here, you had better have a very good excuse. If you do not understand what you must and must not do, ask me and I will be glad to explain the policy to you.

Underneath this preamble, 110 regulations are listed. The first regulation describes a disciplinary policy:

Any officer who disobeys this SOP will be punished by one or more of the following methods: a written warning letter to be put in your personnel file, suspension without pay, extra duty, reduction in rank, poor duty assignments, or dismissal.

Many of the regulations that follow the first regulation prohibit certain types of conduct. Regulation 7, for example, provides, "Don't put your feet on the desk." Regulation 23 says, "You had better not ever accept money or a gift or a favor of any kind to do something which is illegal, immoral, or unethical." Several regulations specify procedural guidelines: Regulation 35 states, "If you have a complaint against another officer you will file a formal complaint form. If the complaint is justifiable a hearing will then be held with [the police chief,] the officer who received the complaint, the person who filed the complaint, any witnesses, any legal counsel, and possibly the Mayor and or Council members present." Other regulations not only prohibit certain conduct, but specify post-violation procedures. *See* Regulation 51 ("any officer who fails to make a case on a clear, intentional violation will be suspended without pay until a dismissal hearing can be scheduled"); Regulation 74 ("Any officer who is guilty of Insubordination, Perjury, Cowardice, or any other Conduct Unbecoming of an Officer will be suspended without pay until a dismissal hearing can be ar-

---

**5.** The plaintiff also has presented no evidence that a constitutionally protected property right arises from oral representations. *See generally Ogletree, supra,* at 1369–71.

**6.** The regulations in effect when the plaintiff was discharged "have since been discarded" and cannot be found. Defendants' Supplemental Brief at 2. The regulations described in this order are those which are presently used by the City of Adairsville Police Department. The current police chief states in his affidavit that the regulations described in this order "are substantively the same as those in effect when the Plaintiff was employed as a patrolman." Affidavit of Chief Autrey at 1. The plaintiff does not dispute this contention, and it is therefore treated as an uncontested fact.

**7.** Appendix A contains a copy of the entire set of regulations.

ranged"); Regulation 91 (specifies vacation policy and concludes with this warning: "Any violation of [this policy subjects an employee] to dismissal").

Several aspects of these regulations indicate that they create a constitutionally protected property interest in employment. First, the regulations seem to exhaust the grounds for which an officer can be discharged and thus appear analogous to a "for cause" discharge requirement. *See Glenn, supra,* at 471–72; *Ogletree, supra,* at 1372 n. 8. Second, the preamble appears to implicitly include a "for cause" requirement in the regulations. *See* Appendix A at 451 ("If you do not abide by the policies set here, you had better have a very good excuse"). Third, several regulations provide that, after an officer is suspended, he is entitled to a hearing, *see* Regulations 51, 74, 91, and one regulation outlines specific procedures to be followed during the hearing. *See* Regulation 23. These regulations thus go beyond the scope of the regulations found deficient in *Ogletree. See Ogletree, supra,* at 1372 n. 8.

None of the regulations, however, explicitly provide that termination will be only "for cause," unlike the regulations in *Glenn. See Glenn, supra,* at 472. Further, only regulations 21, 51, 74 and 91 describe procedures to be followed after a violation occurs, and only one of these regulations "assure[s] that [the] hearing will have any particular contours or involve any specific procedures." *Ogletree, supra,* at 1372 n. 8.

The Court is thus faced with regulations that extensively define permissible conduct but include only sparse references to "the scope of termination procedures to be provided" to an officer. *Id.* at 1369. To aid the Court in deciphering these regulations, the defendants argue that Section 8 of The Charter of the City of Adairsville should be considered. Section 8 provides:

That the said mayor and council of the town of Adairsville shall have power to appoint a marshal and such officers of the town as they may deem necessary and proper, and shall have power to regulate the time and manner of electing officers; to establish their fees and salaries; to take their bonds; to prescribe their duties and oaths, and to remove them from office *for a breach, neglect or incapacity to discharge the said duties at their discretion.*

(emphasis supplied).

In *Ogletree* a similar argument was made. There the appellee argued that a resolution—which was passed by the Fulton County Commission and which created the Fulton County Police Department—should be used to interpret the Fulton County Police Department regulations.[8] The court rejected this argument on two grounds:[9] 1) there was no reason to "look beyond the regulations themselves" because the regulations were "the final product" of the resolution, and because the regulations "unambiguously did not create a for cause" termination requirement, and 2) the resolution was not a proper source of legislative history under Georgia law.[10] *Ogletree, supra,* at 1372–73 n. 8.

The circumstances of this case are significantly different than those encountered by the *Ogletree* court. In this case the City of Adairsville police department regulations do not "unambiguously" indicate whether a for cause termination requirement exists. They extensively define acceptable police conduct, but do not describe the termination process in sufficient detail to indicate clearly whether an officer can be terminated at will. Also, the City of Adairsville police department regulations do not appear

8. The pertinent portion of the resolution stated that the police department regulations should provide for "employee benefits commensurate with existing county policies," and one such policy was that county employees were entitled to a hearing upon dismissal to determine if the dismissal was "for cause." *Ogletree, supra,* at 1372 n. 8.

9. The court also mentioned a third ground which is irrelevant to this case.

10. "It is not the valuable guide to legislative intent that changes in a statute may be. This is especially true here since the Regulations were not developed by the [County] Commission, though it did approve them." *Id.*

to be the "final product" of Section 8 of the City of Adairsville Charter. Indeed, because the regulations extensively define acceptable conduct for a police officer, and because the Charter explicitly describes a discharge procedure, it appears that the regulations were intended merely to regulate the operation of a police office and that Section 8 of the City Charter was enacted to govern removal procedures. Finally, the City of Adairsville Charter provides this Court with a much more useful "source of legislative history" than the Fulton County resolution did in the *Ogletree* case. *Cf. Johnson v. Arnold,* 176 Ga. 910, 912, 169 S.E. 505 (1933) ("the charter of a municipality is its organic law, and bears the same general relation to its ordinances that the constitution of the State bears to its statutes"). Because of these considerations, the *Ogletree* holding does not appear to be controlling, and the city charter will be considered in interpreting the police department regulations.

Section 8 of the City of Adairsville Charter is subject to only one logical interpretation: the mayor and council have discretionary authority to discharge an employee. *Cf. Edwards v. Brown,* 699 F.2d 1073 at 1076 (11th Cir.1983) (ordinance providing that certain police department officers "shall serve during good behavior and efficient service, to be judged by the Commissioner" was held to allow the commissioner to discharge these officers at will). In light of this finding, the Court is compelled to conclude that the plaintiff does not possess a constitutionally protected property interest in employment.

Because of this holding, the Court finds it unnecessary to decide the final two contentions raised by the defendant.

ACCORDINGLY, the defendant's motion for summary judgment is GRANTED.

## APPENDIX A

This is the new SOP for the Adairsville Police and Fire Departments. If you do not abide by the policies set here, you had better have a very good excuse. If you do not understand what you must and must not do, ask me and I will be glad to explain the policy to you.

EFFECTIVE AUGUST 10, 1982

1. Disciplinary policy: Any officer who disobeys this SOP will be punished by one or more of the following methods: a written warning letter to be put in your personnel file, suspension without pay, extra duty, reduction in rank, poor duty assignments, or dismissal.

2. Report any major incident to me immediately. If you cannot reach me use your chain of command.

3. Don't be late for work. Clock in and out.

4. Don't sleep on duty.

5. Don't drink on duty or in uniform.

6. Don't swear or use abusive or obscene language. Don't be rude.

7. Don't put your feet on the desk.

8. Don't chew tobacco or smoke when meeting with a complainant or answering a call.

9. All purchases must have a purchase order signed by myself and the Mayor or a Council member.

10. Don't talk about department business outside of the department. Don't ever backstab another officer.

11. Obey the Georgia Road Laws at all times except when you are in pursuit, answering an emergency call, or responding to a crime in progress call.

12. Do not leave the city without permission except when assisting another agency, answering an emergency call, or in pursuit.

13. The fire truck will not leave the city limits.

14. Be neat and clean. Wear a clean uniform at all times.

15. Uniform policy: All regular police and fire officers will wear a proper uniform when on duty. The uniform will consist of a blue shirt, a pair of black pants, black shoes, dark socks, black belt, the proper patches and rank insignia, and your badge.

We will no longer wear black shirts. Ties and caps or hats are optional. Uniforms must be clean and in good condition. Uniform changes will be in April to short sleeves and October to long sleeves.

16. If you are sick or if you are not able to work call me before the time that you are supposed to be at work.

17. The back door is to be left unlocked at all times except when a prisoner is an escape risk or if a prisoner is out taking a shower.

18. You will attend training.

19. Don't park the car on the sidewalk or on the grass.

20. Do not release confidential information to anyone. Do not give any warrant information, officer's home phone number, license information, or tag registration information to anyone but another law enforcement agency. Use press guidelines when talking to the media.

21. Press Guidelines: Do not give any information about a suspect prior to an arrest. Do not give any information about a death until you are sure that the next of kin has been notified. Do not give any warrant information. Do not give the names of any juveniles or rape victims.

22. If you get stopped by another agency for a violation or for any reason you had better not show them your badge, or ID card, or hint to them that you work for the Police department. If you get a ticket and you are guilty, pay your fine. You had better not try to get out of paying the ticket by using the fact that you work here.

23. You had better not ever accept money or a gift or a favor of any kind to do something which is illegal, immoral, or unethical.

24. Always use the wrecker service that is on call. If the owner of the vehicle requests a particular wrecker service, then and only then will you call a different wrecker. If for any reason the wrecker cannot or will not answer the call go to the next service on the list. If the city vehicles need to be towed call the wrecker that is on call for that month.

25. Don't drive the personal vehicles of the people that you bring in. When the vehicles are towed the officer will do an inventory of the vehicle. The vehicle will be towed to the Fire Hall or to the lot of the wrecker service itself. If towed to the Fire Hall the vehicle will be locked and the gate will be locked.

26. Don't release vehicles or any personal property to anyone but the owners or to a person who has received permission from the owner to obtain his property. Get a signed property receipt.

27. Answer all calls as soon as possible (ASAP). Whenever possible try to meet with the complainant. On prowler report calls get out of the car and look.

28. If you have any city cases you had better be in city court. If you get a subpoena for Grand Jury or Superior Court or Juvenile Court you had better be there.

29. Handcuff all prisoners before putting them in the car. Frisk them for weapons. Put them in the back of the car and bring them in the back of the jail.

30. Don't use the phone very long or very often for personal business.

31. Patrolmen don't stay out of the car for very long. If you are going to be out of the car for awhile take the portable radio with you. Don't stay in the office too long.

32. Don't let persons on work detail sit around. Put them to work.

33. Don't stop any car unless you have probable cause.

34. Do not allow anyone to ride the patrol car who is not a member of the Police Auxiliary.

35. If you have a complaint against another officer you will file a formal complaint form. If the complaint is justifiable a hearing will then be held with myself, the officer who received the complaint, the person who filed the complaint, any witnesses, any legal counsel, and possibly the Mayor and or Council members present.

36. Raise the flags in the morning and lower them at night. Fold them correctly.

37. Do not follow cars outside of the city unless you are attempting to stop the vehicle prior to it leaving the city.

38. Work the school crossing, morning and afternoon. Direct traffic to let the busses out.

39. Before allowing anyone to sleep in the jail, have them sign a release form. Explain to them that they can leave at anytime and do not lock the cell. If we have a prisoner locked up do not allow anyone to sleep here.

40. Don't follow women. Don't flirt with women. Do not frisk women unless it is necessary and then try to get another woman to do the frisking. Always give the beginning and ending mileage when transporting a female. The radio dispatcher is to log down the mileage and exact times.

41. Dispose of alcohol properly. If you confiscate any alcohol as evidence, as soon as Court is over with get rid of it by either pouring it out or giving it back to the person you took it from. Do not carry it home with you.

42. Keep the battery cables in the trunk of the patrol car. Do not leave the cables or any bottles, cans, blackjacks or anything else in the backseat or in the floorboard of the patrol car. These could easily be used as weapons against you or another patrolman.

43. Notify the Coroner of all deaths.

44. Seek medical treatment for prisoners if necessary. If prisoner is going into DT's call an ambulance for him. Do not give him any alcohol to drink. Do not transport anyone to the hospital unless you cannot get an ambulance.

45. You may attend City Council meetings but not Department Head meetings.

46. Stay out of politics. Try to maintain good relations with all agencies and officials and candidates. Of course you have political rights just like any other citizen. All I am saying is try not to antagonize anyone and don't do any politicking on duty or in uniform.

47. Don't sit on one street and run the radar all the time. This is not a big city. You are the only officer on duty when you are here. You must work the traffic and the patrols.

48. Anytime you write a speeding ticket by using the radar be sure that you lock the target speed in and that you offer the driver of the target vehicle the opportunity to see how fast he or she was driving.

49. If you give a warning write a warning ticket.

50. Lock the Post Office at night.

51. Any officer who fails to make a case on a clear, intentional violation will be suspended without pay until a dismissal hearing can be scheduled.

52. Log all warrants received and served.

53. Dispatchers: If the patrolman has a car stopped and you have not heard from him in 4 minutes call for a 10–81. If he is on routine patrol and you have not heard from him or seen him in 1 hour call for a 10–81.

54. Patrolmen: Leave the window rolled down so that you can hear loud music, loud mufflers, screaming, breaking glass, burglar alarms, tires squealing, dogs barking, gunshots, firecrackers, and other noises or disturbances.

55. Read the Implied Consent warning prior to transporting the subject to the station. He must be under arrest. Use the Alco-Sensor to avoid wasting time with someone who probably will not be DUI.

56. If anything is wrong with the patrol car that has to be fixed go ahead and get it fixed if you can.

57. Patrolmen will fill out log sheets on each shift.

58. Patrol every street but concentrate patrols on main streets and businesses and high crime and accident areas.

59. All evidence will be taken from the crime scene. Preserve and protect the crime scene. Keep unauthorized people out. No evidence will be tampered with. Officers will be careful not to destroy any po-

tential evidence. Dust for fingerprints and take photographs.

60. Your personal life is your own business, but be careful and don't embarrass us. Everything that you say or do in public is a reflection on all of us who work here. You may not like it but you are the one who chose to be a public servant. People are not easy to please. People are just naturally critical of their government and the police officer has to enforce the laws passed by the government. So everything we do will be criticized by some people. Try to set the example that you want the public to follow. It looks bad to the public when we speed or run a stop sign or park illegally when we would give a ticket to them for doing the exact same thing. So be careful.

61. Leave the breather on the patrol car alone. If the car was supposed to run that way that is the way that the manufacturer would have made it. Do not unhook the catalytic converter, the smog control, the computer system, or any wires or hoses or plugs.

62. If you don't know how to spell a word look it up in the dictionary or on the spelling list. If you do not know how to spell a person's name look at the driver's license, or look it up in the phone book, or ask the person how to spell their name. There is absolutely no excuse for writing a ticket and misspelling the driver's name or the make of vehicle.

63. The patrolman is responsible for his vehicle and his equipment. Keep the cars clean and do the proper maintenance on the cars. Fill the car with gas and check the oil at the end of each shift. Fill out the maintenance log every day on each shift.

64. Firemen need to check the fire trucks regularly, at least once on their 2 work days.

65. The dispatcher is responsible for the office and the equipment in the office and at the station.

66. Keep the office clean. I don't want this place to look like a pigpen.

67. Patrolmen: Stop by the businesses and walk around. Walk around Public Square and up to the Post Office. Do not go by any routine. Do not always eat at the same time or return to the office at the same time.

68. Check and search all visitors and all items brought to prisoners. Do not allow boxes, handbags, or luggage to be taken to the prisoner.

69. Don't go to the Mayor or Council about department business. If the Mayor or a Council member wants to know something that you are not supposed to talk about call me or have them to call me.

70. Use of Force policy: Use only the amount of force that is necessary to make an arrest, make a traffic stop, or to protect someone else or yourself from injury. Do not use deadly force unless someone else or yourself is in danger of being seriously hurt. Do not fire your weapon unless it is absolutely necessary. Do not fire warning shots. Do not fire at vehicles you are pursuing for traffic violations only. Do not use the patrol car to ram the suspects car. Do not strike anyone unless they are trying to hurt you or someone else. Never strike a prisoner who is handcuffed. Never continually strike a person who is no longer resisting your arrest. Never strike a juvenile or a female.

71. Do not answer any calls outside of the city unless the Sheriff's Office requests you to answer it, and then make sure that they log it on their log and we log it on our log.

72. In any hostage situation the officer will not confront the perpetrator until he is clear from any innocent bystanders. Do not use deadly force except to protect yourself or another person.

73. Visiting Hours at the jail are from 3PM to 4PM on Sunday. Dispatchers use your own discretion at other times.

74. Any officer who is guilty of Insubordination, Perjury, Cowardice, or any other Conduct Unbecoming of an Officer will be suspended without pay until a dismissal hearing can be arranged.

75. Do your paperwork. Fill out all reports, tickets, forms, and logs before you go home. Do them correctly. Be accurate and neat and fill them out completely. Get the names and addresses of all persons involved and all witnesses. Get phone numbers and accurate detailed descriptions of all suspects, vehicles, and property. Be professional.

76. Put things back where you got them in the correct order.

77. Get mugshots and fingerprints and do personal history sheets of all persons who are arrested.

78. Firemen will not make traffic stops. Firemen will not ride along in the patrol car unless they are going to the fire hall, going to a fire, going to a First Responder call, getting the prisoners' meals, running an errand, or some other official non-law enforcement business.

79. Change the next Court date on tickets to the next month's Court date on the Friday prior to Court on Monday.

80. Dispatchers will assist patrolmen with paperwork so that they may resume patrol sooner.

81. Bond Procedures: Any of the following bonds will be acceptable. If you are making city cases make a city bond regardless of where the person signing the bond lives. If you make state cases use a county bond and get it approved by the Bartow County Sheriff's Office first.

(A) Cash Bond—for the amount of the normal fine.

(B) Property Bond—in city cases it will be double the amount of the cash bond. In state cases the amount will be set by the Sheriff's Office or by the Judge. Property Bonds will be acceptable from Bartow, Gordon, and Floyd Counties if they are approved by the Sheriff's Office of said County first.

(C) License Bond—for minor traffic violations it is OK to accept a valid driver's license from a person who lives in Georgia or one of the states that signed the Non-Resident Violator Compact with Georgia.

(D) Bail—by Clyde Greenway of Sentry Bonding Company in Cartersville.

(E) AAA certificate—AAA membership card for minor traffic violations where fines do not exceed $200.

82. Transit Fund procedures: First, see if we have any money in the fund. If we have enough money get the name, date of birth, address, Social Security number, driver's license number, and tag number of the persons requesting the aid. Check to see if the persons are wanted or if their car is stolen. Check to see if they have been here before asking for aid. If anything is wrong or suspicious don't give any aid. If everything is OK give the minimum amount necessary. Never give the travellers any money. If they need gas, or food, or a place to stay, take the check personally to the local business that is providing the service. Try not to give over $5 unless there are children involved then give $10 or whatever is necessary. If you have any questions call myself or Wanda.

83. Patrolmen may carry their gun off duty in the city if they also carry their badge and ID.

84. Pass on information to the oncoming shift. Explain the details. Use the daily sheet and the bulletin board. Read these daily. It is your job to keep informed about what is going on. Read the Incident cards and reports to see what has been happening. Give all BOLOs and keep a record of all BOLOs of 10–99 vehicles, 10–15, 10–17, and 10–43 suspects and vehicles in this area. Also keep a record of all persons who are wanted in this area. If we have a BOLO give it to surrounding area agencies. Communicate with your fellow officers. Tell your relief everything that you can.

85. Trust your fellow officers. If you can't trust them they will not be here long.

86. You may work part time at any job or place of employment that is not illegal, immoral, unethical, or an embarrassment to this department. But if you are going to work part time let us know where you will be and if we have an emergency you will have to leave your part time job and come in to work.

87. Anytime that there is a hazardous materials or chemicals spill evacuate the area and call Tommy, Joel, and myself.

88. Bomb Threats procedures: (1) Do a preliminary check to insure that it is not a false alarm, (2) If there is a genuine threat, evacuate the building and the area, (3) Check the area thoroughly and very carefully, (4) If there is a bomb or explosive or any article that may have a bomb in it call the GBI.

89. Turn in your Overtime to me on Wednesday.

90. No city fireman will drive the CD truck unless he or she is a CD member and has permission from Chief Carlisle to drive it. No city fireman will go to county fires on his shift.

91. Vacation Policy for City Employees: These were adopted by the Mayor and Council at the July, 1981 meeting. They must be strictly adhered to.

(A) All employees must be employed for one year before they are eligible for one weeks vacation.

(B) After 2 years of full employment they are eligible for 2 weeks vacation (only after working 2 full years)

(C) Any employee will have to notify the Mayor and Council 2 weeks in advance to take a vacation.

(D) In order to get the benefit of your vacation you must take it.

(E) No one will be permitted to work their vacation and receive double pay unless approved by the Mayor and Council.

(F) No one will be paid sick days in advance.

(G) Everything will be settled up at the end of the year, no later than January 1st. Nothing will be carried over.

(H) No one will be paid overtime while working in another employees place unless approved by the Mayor and Council and must be notified in advance.

(I) All accumulated time off must be checked out through the Mayor and Council and must be notified in advance.

(J) You will only be paid for the holidays that you work.

(K) Any violation of these rules are subject to dismissal.

92. You may run your own intoximeter test.

93. Males and females can be locked up in the jail but they must be in separate cells. If we have men in 2 cells transport the female to Bartow County.

94. It will be our policy to allow all prisoners to make at least one phone call. We cannot refuse anyone's right to make bond. We can't require a drunk to stay 4 hours if he can make bond immediately.

95. Check on prisoners regularly. If prisoner is an escape risk or if he has a history of mental or medical problems check on him every hour. If he has to take any medication we will give it to him. Do not allow him to keep it in his cell. Do not allow prisoners to drink cokes from the bottles.

96. You may transport prisoners across the county line to get a blood test, urine test, or an intoximeter test.

97. Meals for prisoners: If prisoner works and is locked up feed him 3 meals a day. If he is locked up but does not work feed him 2 meals a day. If he is not locked up do not feed him. The meals will consist of the following:

Breakfast: 2 eggs, grits, bread, beverage

Lunch: 2 vegetables, 1 meat, bread, beverage

Dinner: 3 vegetables, bread, beverage

Substitutes: You may give him a hamburger in place of lunch or dinner.

Beverages: soft drink, coffee, milk, tea, water

98. Police Auxiliary restrictions of powers: In accordance to POST standards it will be the policy of this department to place the following limitations upon the Police Auxiliary: (1) they will have no arrest powers unless they are certified by the state, (2) they must wear a different uniform and badge, (3) they cannot ride in the patrol car by their self, they must ride with

a certified officer, (4) they cannot make a traffic stop or issue a traffic ticket or warning.

99. To become a member of the Police Auxiliary or the Volunteer Fire Department a person must be approved by myself and by the Mayor and Council, and in the case of the Volunteer Fire Department they must be voted in by the other members.

100. Dispatchers: Fill out incident cards on all incidents large and small. Also put the information on the radio log. Get all the information you possibly can. If possible get a call back phone number and the name of the complainant. Always get the details and the exact location. Mark down the exact time you got the call and dispatch the information to the patrolman as soon as possible.

101. Monitor the CB radio and the scanner. Use the proper radio procedures at all times. If another agency is in a 10–80 or has important traffic, don't talk on the radio until it is OK to do so. If you have traffic of a routine nature call the station or the patrol car on the CB when other agencies have something important going on.

102. We are monitored by the FCC so try to be professional in every aspect of your jobs. Don't play with the radio, it is not a toy. Use codes and signals. Use 10 signals when talking to another agency. Don't turn the radio up too loud or down too low. Keep the TV and stereo turned down low. Don't talk too loud or too much. Don't use the radio unless it is needed. Speak clearly and in a normal tone of voice. Don't shout or get excited. Keep calm. Listen closely to the radio and to what the complainant is saying on the phone. Don't try to talk on the phone and the radio at the same time.

103. Don't have the patrolman to 10–19 unless it is really necessary.

104. Procedure for handling Fire calls: If the fire is in the county we will call the appropriate agency and if necessary the CD volunteers. The on duty fireman will remain at his post. If the fire is in the city the following procedure will be followed: (1) the dispatcher will get all the information possible from the caller, (2) Fireman will call patrolman to come back to the station. If the patrolman is in the immediate area of where the fire is supposed to be he will check to see if it is a false alarm, (3) the fireman will leave immediately for the fire hall in Car 3 or in his personal vehicle, (4) the patrolman will return to the station and will proceed to call for additional help, regular firemen will be called first and then the volunteers, (5) call someone else to come and dispatch, (6) if necessary call additional personnel: Georgia Power, Bartow County Fire Department, Maintenance crew, ambulance, etc., (7) patrolman resume normal duties.

105. Alarms procedures: (1) patrolman will respond ASAP, (2) dispatcher will call the place of business or the person on the list to come turn the alarm off, (3) the patrolman will check all doors, windows, vehicles in the area, the roof, trees, bushes, hedges, any persons in the area, etc., (4) if during business hours stay out of sight and don't use lights or siren, (5) if crime is in progress call for backup units and don't do anything until backup help arrives, (6) get innocent bystanders out of the way, (7) attempt to make an arrest only after danger to innocent people has passed, (8) get a good description of the suspects, their vehicle, the hostages (if any), weapons, and direction of travel.

106. First Responders: When you are called to a case try to get a ride with the patrolman, if you cannot try to take Car 3, only as a last resort should you use your own personal vehicle. If you do have to take your own vehicle you must obey all the traffic laws. Don't speed, run a stop sign, or pass another vehicle improperly.

107. Keep the gate locked over at the Fire Hall.

108. Keep the doors in the Fire Hall closed. No one should be over there who is not a fireman, volunteer fireman, CD member, or a county fireman.

109. Tornado Watch Alert (Conditions are such that a tornado is possible in this

area). The dispatcher will: (1) Notify the Chief and the patrolman to be on watch, (2) Notify School authorities, (3) Broadcast over the CB radio (Channel 9) that a Tornado Watch is in effect until further notice, (4) when the alert is cancelled let the people know in the same order as you notified them.

110. Tornado Warning Alert (Tornado has been sighted in this area): The radio dispatcher will: (1) Notify all Police and Fire personnel to duty, (2) Notify Schools, local industries and businesses; (3) Notify the local CD Director, (4) Broadcast every 2–3 minutes over the CB radio (Channels 9 & 19) the following: "This is the Adairsville Police Department. A Tornado Warning is in effect until further notice. A tornado has been sighted in this area. Take cover. KEL 3178." (5) If a tornado is sighted in the city the dispatcher will turn the blast siren on, (6) when it is safe to resume normal operations the dispatcher will cancel the alert, (7) when the danger is passed all available Police and Fire personnel will search the city for persons needing medical or emergency assistance and will provide any assistance that is possible. (8) If necessary shelters are available in the basements of the Christian Church on Hotel Street, the Baptist Church on Summer Street, and the Methodist Church across the road. If other shelter is necessary we will try to use the City Hall, the Old Courthouse, the jail, the Fire Hall, the Recreation building, the School buildings, and the other churches in the area. (9) Notify other personnel as they may be needed to perform special tasks: Georgia Power, City Maintenance, Sanitation crew, ambulances, wreckers, First Responders, CD members, and volunteers.